Edward Garrett HOSKINS, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellee.

No. 72-2500.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1973.

Wilfred C. Varn, Tallahassee, Fla., Court-appointed for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tampa, Fla., Wallace E. Allbritton, Asst. Atty. Gen., William D. Hopkins, State's Atty., Tallahassee, Fla., for respondent-appellee.

ON PETITION FOR REHEARING

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

We step back into the batter's box, having allowed one to go by us [1] and tipping another,[2] in hopes that on our third and final swing we can avoid a judicial strike-out.

Edward Garrett Hoskins was indicted on May 21, 1959, in the Circuit Court of

---

1. Hoskins v. Wainwright, 5 Cir., 1971, 440 F.2d 69.

2. Our per curiam opinion in Hoskins v. Wainwright, 5 Cir., 1972, 472 F.2d 158, tipped the case and it rolled out of bounds. That opinion is hereby vacated.

Leon County, Florida, for attempted robbery. Over eight and a half years later, on January 18, 1968, he was tried and convicted for that crime.

 After exhausting his state remedies, Hoskins petitioned the federal court for habeas relief alleging that the state's inordinate delay in bringing him to trial had deprived him of his Sixth Amendment right to a speedy trial. The District Court denied the relief and Hoskins appealed. Though we found that the record disclosed an "unjustified an inordinate prosecutorial delay" and though Hoskins strenuously urged that Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, required automatic reversal in such an instance, we let the opportunity to reverse and render go by. Hoskins v. Wainwright, 5 Cir., 1971, 440 F.2d 69. Instead, we remanded the case to the District Court for an evidentiary determination of whether Hoskins had suffered any prejudice by the delay. Realizing now, however, that prejudice is not the *sine qua non* of judicial relief for a deprivation of a defendant's Sixth Amendment right to a speedy trial, we reverse the District Court's subsequent denial of relief based upon a "no prejudice" finding and issue the writ.[3]

Hoskins' main defense was alibi. One of the two people who he contends could have established his alibi, his father-in-law Ben Walls, died on August 17, 1962, three years and three months after an indictment about which Hoskins was not even aware at that time.

And while Hoskins' defense waned the State's case waxed. The State's case consisted primarily of the testimony of three eye witnesses. There were crucial variances between their immediate accounts of the incident to the investigating police officer, and their subsequent testimony nearly nine years later. Mr. and Mrs. Atkinson, both government witnesses, told the investigating officer that the would-be robber had worn a stocking which was pulled way down on his chest. At the trial they testified that the stocking was merely pulled down to his chin, and that the robber had a large protruding Adam's apple. This was a crucial point of identification as to Hoskins. Mrs. Atkinson also told the investigating officer that the intruder had big brown eyes. Hoskins had only one eye, and it was blue.

These particulars convince us that even if impairment of the defendant's case was a requisite under the Sixth Amendment—which we emphasize *it is not!*—the facts of this case are so similar to *Dickey, supra,* that we must reverse.

But while impairment of the defense may be the most serious type of prejudice that can be suffered, it is clearly not the only type of prejudice recognized by the Sixth Amendment. The Supreme Court has also recognized that a person under indictment and subjected to a lengthy, unjustified delay may also be "prejudiced" by [i] lengthy pretrial incarceration, or [ii] the personal anxiety attendant upon public accusation. Mr. Justice White has suggested that it is at

---

3. After our initial remand, the District Court "ordered" the state court to hold an evidentiary hearing. In a noble gesture of judicial statesmanship, Chief Judge Ben C. Willis of the Circuit Court of Leon County, Florida, accommodated the federal Judge's desires and held a hearing—although it is clear that he did not have to do so. *Compare* Milton v. Wainwright, 5 Cir., 1968, 396 F.2d 214; Cline v. Beto, 5 Cir., 1969, 418 F.2d 549; *with* Anderson v. Beto, 5 Cir., 1972, 469 F.2d 1076; Dixon v. Beto, 5 Cir., 1973, 472 F.2d 598. He held—and the District Court below adopted his holding—that the state had effectively demonstrated that Hoskins' case was not prejudiced by the delay.

To the extent that this holding is a finding of fact, it is "clearly erroneous". To the extent that it is a conclusion of law, it is likewise in error. But this is an alternative basis of our holding, and we point out these facts only to make our discussion complete.

Assuming for the moment, as the court did below, that "prejudice" as a requirement for Sixth Amendment relief in a speedy trial case means impairment of the defense, we find that the record discloses sufficient instances of impairment to require reversal. A time delay might impair a defendant's case in many ways. Speaking for a unanimous Supreme Court, Justice Powell recently spoke of two:

If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

Barker v. Wingo, 1972, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 118.

## The Sixth Amendment

The Sixth Amendment to the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Although the right had its roots in the Twelfth and Thirteenth Century commissions of gaol delivery and oyer and terminer, and found expression in the Magna Carta, Coke's Institutes, and the Sixth Amendment, it was not until 1967 that the United States Supreme Court declared that the right was a fundamental guarantee of the Sixth Amendment which, acting through the Due Process Clause of the Fourteenth Amendment, was binding on the States. Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

Naturally, there were many questions to be answered. To what extent did *Klopfer* require that States move to prosecute persons indicted but beyond the territorial confines of the state in custody of a sister state or the federal government? To what extent should the decisions delineating the right be applied retroactively? What criteria should a court use to assess a defendant's claim that his speedy trial right had been abused.[4]

## The Duty To Prosecute The Extraterritorial Detainee

In Smith v. Hooey, 1969, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, the Supreme Court answered the question as to the extent of the State's duty to bring a defendant who is incarcerated by federal or state authorities beyond its territorial jurisdiction to trial. The Court held that a state is under an affirmative obligation by virtue of the Sixth Amendment, as interpreted in *Klopfer*, to make every good faith effort to bring the accused to trial.

these levels of "personal prejudice" that judicial scrutiny should initially be focused:

"A defendant desiring a speedy trial, therefore, should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the *inevitable personal prejudice resulting from delay* would it be necessary to consider whether there has been or would be prejudice to the defense at trial. '[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense'."

Barker v. Wingo, *supra* at 537–538, 92 S.Ct. at 2195, 33 L.Ed.2d at 121 (White, J. concurring) (Emphasis added), quoting in part, United States v. Marion, 1971, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478.

The Sixth Amendment guarantees to every criminal accused the right to a "speedy and public trial". It is a personal right. And when an accused is deprived of this right he suffers "prejudice" from the mere loss of the right.

The crux of our decision today is simply this. At some juncture in a criminal prosecution the government's lengthy, inexplicable delay, in the face of vigorous demands for an immediate trial, is so offensive to the Sixth Amendment's guarantee of a speedy trial that a Court must intervene regardless of whether the defendant has been incarcerated, subjected to public scorn and obloquy, or impaired in his ability to defend himself. But in those cases where the analysis of the other three *Barker* factors does not automatically compel this result, courts must be ever vigilant to make sure that the term "prejudice" is not used synonymously with "impairment of the defense". As our Brother Godbold has noted:

"The prophylactic effect of the clause as a protection of the innocent is substantially eroded if the fact of conviction in unimpaired trials removes from appellate consideration the interest of minimizing the consequences of incarceration and public accusation."

Godbold, Speedy Trial—Major Surgery for a National Ill, 1972, 24 Ala.L.Rev. 265, 285.

4. Other questions, not germane to this appeal, have been answered by courts presented with speedy trial issues. See, e. g., United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (pre-arrest, pre-indictment delay not counted for purposes of Sixth Amendment motion absent a showing of actual prejudice); United States v. Strunk, 1973, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 [1973] (Dismissal is only remedy for abuse of speedy trial right); United States v. Dyson, 5 Cir., 1972, 469 F. 2d 735 (Statute or court-imposed rule may require more stringent standard than that imposed by Constitution).

Smith was indicted in Harris County, Texas, in 1960 on a charge of theft. At the time of his indictment he was incarcerated in the federal penitentiary at Leavenworth, Kansas. Shortly after receiving the indictment, Smith began a series of efforts, culminating in a petition for writ of mandamus to the Supreme Court of Texas, to be tried. Although procedures were readily available for Smith to be tried under a writ of habeas corpus ad prosequendum and, as a matter of comity, federal authorities made every effort to accommodate states' requests in this regard, Smith was denied all relief. On certiorari, the United States Supreme Court reversed.

The Court recognized that the three basic interests served by the Speedy Trial Clause were "[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself," 393 U.S. at 378, 89 S.Ct. at 577, 21 L.Ed.2d at 611, quoting United States v. Ewell, 1966, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630. To the degree that any man might be adversely affected in any of these particulars by a substantial delay, he would be "prejudiced". Examining the plight of the accused who is incarcerated in another jurisdiction on another charge in light of these three types of "prejudice", the Court held that the State may not deprive this type of defendant of the right merely because there is some minor logistical barrier to bringing the case to trial.

The presence of a detainer and the fact that the defendant was incarcerated on another charge could substantially prejudice him in two important respects. First, he might lose entirely the possibility that any sentence imposed in the event of conviction of the second offense might be served concurrently with the remaining term of his federal or state sentence. Second, in many instances the presence of the detainer for future trial might prejudice his opportunity for clemency, pardon, parole, or trusteeship.

Likewise, the Court found that the anxiety caused by the outstanding accusation had a debilitative effect on rehabilitative efforts.

Finally, the Court held that the likelihood of actual impairment of the defense of the case was severely more acute when the accused was incarcerated in another jurisdiction:

> "Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while 'evidence and witnesses disappear, memories fade, and events lose their perspective', a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time."

393 U.S. at 379-380, 89 S.Ct. at 578, 21 L.Ed.2d at 612 (footnote omitted). Thus, in the present case, it would seem that Florida's suggestion that it was under no duty to proceed with the prosecution of Hoskins because he was incarcerated in Georgia is refuted by the clear holding of Smith v. Hooey.

### *Retroactivity*

■ But the State of Florida contends that our decision in Henderson v. Circuit Court of the Tenth Judicial Circuit, 5 Cir., 1968, 392 F.2d 551, rather than Smith v. Hooey, was the controlling law for the time period in question. Implicit in this argument is the contention that Smith v. Hooey may not be given retroactive application. We reject that argument for two very important reasons.

First, on June 14, 1967, approximately a year and a half before Smith v. Hooey, the Supreme Court of Florida held that the State was constitutionally bound by both the federal and the state constitutions to avail itself of existing means to

bring a person being held under a detainer warrant in another jurisdiction to trial. Dickey v. Circuit Court, Fla., 1967, 200 So.2d 521. Thus, the right was recognized in Florida well before Smith v. Hooey. Indeed, it was only in light of this decision of the Florida Supreme Court that petitioner Hoskins was able to get the writ of mandamus which ultimately led to his trial.

More importantly, however, is the rejection of Florida's argument by the United States Supreme Court in Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26. *Dickey* was a case substantially similar to *Hoskins*. Dickey was the subject of a Florida arrest warrant issued on July 1, 1960,[5] for armed robbery. At the time this warrant was issued, Dickey was in custody on a federal bank robbery charge of which he was subsequently convicted. Several times throughout the period he was serving his federal sentence, Dickey sought trial on the Florida charge. In December of 1967, the State Attorney saw the handwriting on the wall, i. e., Dickey v. Circuit Court, *supra*, and proceeded with the filing of an information. Trial was held on February 13, 1968. Dickey was convicted and sentenced to 10 years' confinement to run consecutively with the remainder of his federal sentence.[6]

In the Supreme Court, Florida argued:

"that the right of the petitioner under the Federal Constitution did not arise until this Court's decision in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and that not until Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), was there a constitutional requirement that the State press for trial of a defendant in custody in another jurisdiction."

398 U.S. at 36–37, 90 S.Ct. at 1568, 26 L.Ed.2d at 31. The Court held, in spite of this argument, that Dickey's Sixth Amendment right had been abused, and that reversal of the judgment and dismissal of the indictment was required. Although the Court did not discuss the extent to which Smith v. Hooey was to be applied retroactively, implicit in its holding is a rejection of the contention that cases tried before Smith v. Hooey are to be controlled by *Henderson, supra*.

Thus, we hold that to the extent which it is inconsistent with *Dickey, Henderson* must yield. For the case at bar, that is all that need be said. Hoskins, like Dickey, was tried before Smith v. Hooey. Hoskins, like Dickey, was denied his Sixth Amendment right to a speedy trial. Hoskins, like Dickey, must go free. We rejected Florida's non-retroactivity argument in Hoskins v. Wainwright, 5 Cir., 1971, 440 F.2d 69, 71–72, and we reject it again now. See also May v. Georgia, 5 Cir., 1969, 409 F.2d 203. It is the law of the case and the law of the land. And there it ends.

### Criteria For Assessment Of The Right

In many respects, modern speedy trial law began with Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. There, speaking for a unanimous Supreme Court, Mr. Justice Powell enunciated the four criteria which must be evaluated in each case, on an *ad hoc* basis, to assess a speedy trial claim:

[i] "Length of delay,

[ii] the reason for the delay,

5. As the Supreme Court pointed out, this tolled the Statute of Limitations under Florida law. 398 U.S. at 32 n. 3, 90 S.Ct. 1564. It is important to note that most of the delay in the trials of Smith, Dickey, and Hoskins occurred prior to the imposition of the obligation on the States in *Klopfer*. Thus, it is clear that in post-*Klopfer* trials the State must account for pre-*Klopfer* de-

lay. The applicability of *Klopfer* to pre-*Klopfer* cases is an issue which we need not decide at this juncture.

6. In this respect, Hoskins' claim of prejudice would be greater than Dickey's, were we to base our decision on a finding of prejudice. See note 3, *supra*.

[iii] the defendant's assertion of his right,[7] and

[iv] prejudice to the defendant."

407 U.S. at 530, 92 S.Ct. at 2192, 33 L. Ed.2d at 117.[8] The fourth factor, prejudice, was further subdivided according to "the interest of defendants which the speedy trial right was designed to protect." Thus, the Court held that a defendant could be "prejudiced" by:

[a] oppressive pretrial incarceration,

[b] anxiety and concern, and

[c] impairment of the defense.

But in announcing this matrix for the analysis of Sixth Amendment speedy trial claims, the Court hastened to point out:

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

407 U.S. at 533, 92 S.Ct. at 2193, 33 L. Ed.2d at 118.

■ If this means what it says, there must be some point of coalescence of the other three factors in a movant's favor, at which prejudice—either actual or presumed—becomes totally irrelevant. And so we hold.

Prior to *Barker* the law required a showing of prejudice as a prerequisite to relief. In *Dickey, supra,* Mr. Justice Brennan commented at length upon this requirement, and the problems it posed:

Although prejudice seems to be an essential element of speedy-trial violations, it does not follow that prejudice —or its absence, if the burden of proof is on the government—can be satisfactorily shown in most cases. Certainly, as the present case indicates, it can be established in some instances. It is obvious, for example, if the accused has been imprisoned for a lengthy period awaiting trial, or if the government has delayed in clear bad faith. But concrete evidence of prejudice is often not at hand. Even if it is possible to show that witnesses and documents, once present, are now unavailable, proving their materiality is more difficult. And it borders on the impossible to measure the cost of delay in terms of the dimmed memories of the parties and available witnesses. As was stated in Ross v. United States, 121 U.S.App.D.C. 233, 238, 349 F.2d 210, 215 (1965): "[The defendant's] failure of memory and his inability to reconstruct what he did not remember virtually precluded his showing in what respects his defense might have been more successful if the delay had been shorter. . . . In a very real sense, the extent to which he was prejudiced by the Government's delay is evidenced by the difficulty he encountered in establishing with particularity the elements of that prejudice." Similarly, there is usually little chance of conclusively showing the harm sustained by an accused as a result of public accusation.

7. The Court emphatically rejected the so-called "demand/waiver rule" which stated that an accused must either demand a speedy or immediate trial or be deemed to have waived it. Rather, the probative value of defendant's assertion of his right was to be taken into account with the other factors.

The Court also rejected the opposite extreme—a fixed time period beyond which the Sixth Amendment would be violated—though it recognized the authority of states and lower federal courts to impose fixed time periods by statute or rule.

8. The factors coincide, with the exception of the Court's rejection of the waiver concept, with standards announced for this Circuit in United States v. Auerbach, 5 Cir., 1969, 420 F.2d 921, 924. Thus, this Court's determination in Hoskins v. Wainwright, 5 Cir., 1971, 440 F.2d 69, that the right had been denied is still valid. Since *Barker,* we have consistently employed the *Barker* methodology. E. g., Arrant v. Wainwright, 5 Cir., 1972, 468 F.2d 677.

One commentator has stated that "[t]here is no way of proving the prejudice to the accused which occurs outside the courtroom . . . the public suspicion, the severing of family and social ties, and the personal anxiety." Note, The Right to a Speedy Criminal Trial, 57 Col.L.Rev. 846, 864. Nor, of course, is there any ready way of establishing the prejudice to community interests from delay.

Despite the difficulties of proving, or disproving, actual harm in most cases, it seems that inherent in prosecutorial delay is "potential substantial prejudice," United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1157 (1967), to the interests protected by the Speedy Trial Clause. The speedy-trial safeguard is premised upon the reality that fundamental unfairness is likely in overlong prosecutions. We said in Ewell, supra, 383 U.S. at 120, 86 S.Ct. at 776, 15 L.Ed. 2d at 630, that the guarantee of a speedy trial "is an important safeguard . . . to limit the possibilities that long delay will impair the ability of an accused to defend himself," and Judge Frankel of the District Court for the Southern District of New York has stated that "prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years." United States v. Mann, 291 F.Supp. 268, 271 (1968). 398 U.S. at 53–54, 90 S.Ct. at 1576, 26 L.Ed.2d at 41. His suggestion was to establish a triggering point beyond which prejudice would become an issue only if the government wished to argue that the error was harmless beyond a reasonable doubt. See Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

But *Barker* tells us that the quest for this point is unnecessary, for none of the four criteria are "either necessary or sufficient".

In the case at bar, that makes our task simple. On Hoskins' first appeal to this Court we found that "the record before us establishes the element of unjustified and inordinate prosecutorial delay", 440 F.2d at 71, and in accordance with the state of the law at that time, we remanded to the District Court for a determination of whether the delay had prejudiced Hoskins.[9] But the law has changed.

"Inordinate" certainly means that the length of the delay between the indictment and Hoskins' trial was impermissibly long. "Unjustified" means that the State has failed to offer any acceptable reason for the delay to the Court. And no one can say that Hoskins has not vigorously asserted his right.[10] That leaves only prejudice.

9. As a procedural matter, we followed Justice Brennan's suggestion in *Dickey, supra,* that the State be required, because the length of the delay had made out a prima facie case of abuse of the right, to bear the burden of proving that there was no prejudice. See also Murray v. Wainwright, 5 Cir., 1971, 450 F.2d 465, 471. Cf. United States v. Dyson, 5 Cir., 1972, 469 F.2d 735, 741. Obviously, this will still be a desirable approach for cases in which the other factors do not automatically require dismissal without an inquiry into the issue of prejudice.

10. This distinguishes Hoskins' case from the actual holding of *Barker.* In *Barker,* the Supreme Court held that the Sixth Amendment right was not violated, even though there had been a lengthy, unjustified delay, because there was no showing of prejudice and the record clearly established that Barker did not want a speedy trial. The Court left no room for mistake as to which of these two factors it found most persuasive:

"More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial."

407 U.S. at 534, 92 S.Ct. at 2194, 33 L.Ed.2d at 119.

Hoskins, on the other hand, made a demand for an immediate trial on February 27, 1963, when he first learned of the presence of the detainer warrant. Not until the Supreme Court of Florida had decided Dickey v. Circuit Court, *supra,* in 1967, however, did his demand get any concrete results— and then only at the behest of his own motion for writ of mandamus.

On the record before us we have an unexplained eight and a half year delay between accusation and trial, and a petitioner who continually made demands upon the State for a trial. Given these facts, we hold that the petitioner's right to a speedy trial, as guaranteed by the Sixth Amendment, has been abused. Prejudice is simply no longer an issue.

Reversed and remanded.