Aubrey Langston McCARTY

v.

Jack HEARD, Sheriff of Harris
County, Texas.

Civ. A. No. 71–H–1244.

United States District Court,
S. D. Texas,
Houston Division.

Sept. 19, 1974.

Paul R. Lawrence, Houston, Tex., for plaintiff.

Joe S. Moss, Houston, Tex., for defendant.

*Memorandum and Order*

SINGLETON, District Judge.

Aubrey Langston McCarty, presently confined in the Texas Department of Corrections and represented herein by counsel appointed by this court, seeks habeas corpus relief on the ground that his state conviction is illegal in that he was denied a speedy trial. For the reasons that follow, this court concludes that petitioner was denied his sixth amendment right to a speedy trial, grants the petition, and following the dictates of Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), orders that petitioner be released from confinement and that the indictment against him be dismissed.

FACTS

The Texas offense petitioner was convicted of was alleged to have occurred on June 2, 1967.[1] On July 8, 1967, he was arrested in Knox County, Tennessee, for another offense committed in that state. For that offense, he was tried, convicted, and imprisoned in Tennessee. Although it is not clear when he was first accused of the Texas offense, the indictment for that offense was returned December 9, 1968. Petitioner was sent to Bush Mountain Prison unit in Tennessee in October of 1969. After serving his sentence there, he was transferred to Federal prison at Texarkana on May 8, 1970. He was returned to Harris County June 14, 1971. An attorney was appointed by the Texas court to represent him and after two preliminary hearings he had his trial before a jury on July 22, 1971, two years and seven months after his indictment, over four years after the date of the offense. His conviction was affirmed on appeal two years later. McCarty v. State, 498 S.W.2d 212 (Tex.Cr.App. 1973).

This petition was originally filed November 5, 1971, while his appeal to the Texas Court of Criminal Appeals was pending.[2] By memorandum and order dated April 14, 1972, the petition was dismissed without prejudice for lack of state-remedy exhaustion. Upon motion his petition was reinstated by memorandum and order dated December 13, 1973. His state remedies have now been exhausted by virtue of the fact that his speedy trial claim was presented to the Texas Court of Criminal Appeals on direct appeal and by that court overruled. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); O'Neal v. Beto, 428 F.2d 1164 (5th Cir. 1970); Young v. Alabama, 427 F.2d 177 (5th Cir. 1970).

COMPENDIUM OF THE SPEEDY TRIAL CLAIM

In Hoskins v. Wainwright, 485 F.2d 1186 (5th Cir. 1973) Chief Judge Brown spoke of the four criteria which must be evaluated to assess a speedy trial claim:

"In many respects, modern speedy trial law began with Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. There, speaking for a unanimous Supreme Court, Mr. Justice Powell enunciated the four criteria which must be evaluated in each case, on an *ad hoc* basis, to assess a speedy trial claim:

(i) 'Length of delay,

(ii) the reason for the delay,

1. Petitioner was convicted of passing a forged instrument. His punishment, enhanced under the provisions of the Texas recidivist statute (Article 63, V.A.P.C.), was life imprisonment.

2. Petitioner had previously filed three other petitions for writ of habeas corpus prior to his state court trial. Each was dismissed for failure to exhaust state remedies. Aubrey L. McCarty v. State of Texas, et al., Civil Action No. 71–H–182; Aubrey Langston McCarty v. Sheriff of Harris County, Civil Action No. 71–H–801; Aubrey L. McCarty v. State of Texas, et al., Civil Action No. 71–H–802.

(iii) the defendant's assertion of his right [footnote omitted], and

(iv) prejudice to the defendant.'

407 U.S. at 530, 92 S.Ct. at 2192, 33 L. Ed.2d at 117 [footnote omitted]."

## 1. *Length of Delay*

■ As noted above, the time between the return of the indictment and the trial was two years and seven months—without a doubt, an inordinate delay. However, just as the Court in Barker rejected the "demand/waiver rule" it likewise rejected the opposite extreme—a fixed time period beyond which the sixth amendment would be deemed violated. Thus, the delay by itself does not constitute a *per se* violation of the speedy trial right.

## 2. *Reason for the Delay*

■ The State gives two reasons for the delay, neither are satisfactory. Petitioner was incarcerated, either in the Tennessee Prison or the federal prison in Texarkana, for nearly the entire period of delay. The state explained that the delay was partially caused by logistical barriers attendant to the extraterritorial detention.

The Supreme Court in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607 (1969) held that even though an accused is incarcerated by federal or state authorities beyond its territorial jurisdiction, the State is under an affirmative obligation by virtue of the sixth amendment, to make every good-faith effort to bring the accused to trial.

> [T]he State may not deprive this type of defendant of the right merely because there is some minor logistical barrier to bringing the case to trial.

Hoskins v. Wainwright, *supra* 485 F.2d at 1190.

Although it appears that part of the delay in petitioner's case occurred prior to the decision in Smith v. Hooey, *supra*, the question whether pre-*Hooey* delay should be taxed against the state retroactively was emphatically answered in *Hoskins* with the following statement:

We rejected Florida's non-retroactivity argument in Hoskins v. Wainwright, 5 Cir., 1971, 440 F.2d 69, 71–72, and we reject it again now. See also May v. Georgia, 5 Cir., 1969, 409 F.2d 203. It is the law of the case and the law of the land. And there it ends.

Hoskins v. Wainwright, *supra* at 1191.

3. *Peitioner's Assertion of His Rights* delay was an overcrowded docket. In weighing this reason, it must be kept in mind that the ultimate responsibility of such circumstances must rest with the State rather than the petitioner. Barker v. Wingo, *supra*, 407 U.S. at 531, 92 S.Ct. 2182; Strunk v. United States, 412 U.S. 434, 436, 93 S.Ct. 2260, 2262, 37 L. Ed.2d 56, 60 (1973). The blame for the inordinate delay in this case rests squarely with the State. The State has failed to offer an acceptable reason for the delay; thus, the delay is "unjustified." *See Hoskins, supra* 485 F.2d at 1193.

## 3. *Petitioner's Assertion of His Rights*

■ Beginning at least one year and seven months before he was finally granted his trial, petitioner launched his writing campaign demanding a speedy trial or dismissal of his indictment (see Appendix). It can only be said that he vigorously and persistently asserted his right.

## 4. *Prejudice to the Petitioner*

At the state trial and appeal petitioner claimed that his defense was impaired by the nonavailability of a witness, that nonavailability being caused by the delay. He quite candidly abandons that claim in his petition for habeas relief. Instead, he relies solely on the other prejudices aside from his ability to defend himself, and the contention that he was denied his right to a speedy trial by the inordinate and inexplicable delay without regard to whether he can sufficiently prove prejudice resulted from the delay.

Judge Brown, in analyzing *Barker*, pointed out that

[t]he fourth factor, prejudice, was further subdivided according to "the interest of defendants which the speedy trial right was designed to protect." Thus, the Court held that a defendant could be "prejudiced" by:

 (a) oppressive pretrial incarceration,

 (b) anxiety and concern, and

 (c) impairment of the defense.

But in announcing this matrix for the analysis of Sixth Amendment speedy trial claims, the Court hastened to point out:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

If this means what it says, there must be some point of coalescence of the other three factors in a movant's favor, at which prejudice—either actual or presumed—becomes totally irrelevant. And so we hold.

*Hoskins, supra* 485 F.2d at 1192.

The State argues that petitioner must show "prejudice" before he is entitled to judicial relief for a denial of a speedy trial. From this it is argued that since petitioner was in custody under convictions in other jurisdictions during the delay, the prejudice resulting from "oppressive pretrial incarceration" and "anxiety and concern" can be discounted, leaving only "impairment of the defense"—a point the petitioner readily admits he cannot prove.

▮ First, the question whether the proof of prejudice is the *sine qua non* of judicial relief for a deprivation of a defendant's sixth amendment right to a speedy trial was answered in *Barker* and underscored in *Hoskins*:

> The Sixth Amendment guarantees to every criminal accused the right to a "speedy and public trial". It is a personal right. And when an accused is deprived of this right he suffers "prejudice" from the mere loss of the right.

> The crux of our decision today is simply this. At some juncture in a criminal prosecution the government's lengthy, inexplicable delay, in the face of vigorous demands for an immediate trial, is so offensive to the Sixth Amendment's guarantee of a speedy trial that a court must intervene regardless of whether the defendant has been incarcerated, subjected to public scorn and obloquy, or impaired in his ability to defend himself.

*Hoskins, supra* at 1189, n. 3.

▮ Second, even if proof of prejudice were a prerequisite to relief, petitioner has sustained that burden by demonstrating that because his Texas trial was delayed until his release, he lost entirely the possibility that the sentence imposed on him in the Texas court might be served concurrently with the term of his federal or Tennessee sentence. Also, the detainer that was placed on him by the Texas authorities may have prejudiced his opportunity for clemency, pardon, parole, or trusteeship. And certainly, he was prejudiced by the anxiety caused by the outstanding accusation, which ironically tends to have a "debilitative effect on rehabilitative efforts." *See* Smith v. Hooey, *supra;* Hoskins, *supra* 485 F.2d at 1190; Strunk v. United States, *supra,* 412 U.S. at 438, 94 S.Ct. at 2263, 37 L.Ed.2d at 61.

▮ The delay occasioned in this case, in the face of persistent demands for a speedy trial or dismissal of the indictment,[3] was inordinate and unjusti-

---

3. Compare *Barker* wherein the record established that Barker did not want a speedy trial. *Hoskins, supra,* 485 F.2d at 1193, n. 10.

fied. Petitioner's sixth amendment right to a speedy trial was denied him.

Accordingly, the petition for writ of habeas corpus must be granted, the petitioner must be released, and the indictment must be dismissed—"the only possible remedy." Strunk v. United States, *supra* 412 U.S. at 438, 93 S.Ct. at 2263, 37 L.Ed.2d at 61. It is so ordered.

## APPENDIX

The following is a chronology and summary of petitioner's efforts to gain a speedy trial:

December 9, 1968  Indictment returned.

July 2, 1969  Letter from appellant to the District Attorney of Harris County in part reading: "Request that your office remove from against me all charges and detainer warrants you have so issued."

October, 1969  Petitioner was sent to Bush Mountain Prison unit in Tennessee.

December 26, 1969  Letter from petitioner to the District Attorney of Harris County stating: "You will treat this letter as a Habeas Corpus petition ad-prosequendom requesting immediate trial under the fair and speedy trial clause of the Sixth Amendment to the Federal Constitution," and ".   .   .   afford me a trial forthwith or withdraw the 'detainer warrant'   .   .   .   ."

January 15, 1970  Letter from the District Attorney of Harris County to the Tennessee Department of Corrections which acknowledges petitioner's request for a speedy trial and request the procedures which the Tennessee authorities will require for the return of the petitioner for trial in Texas.

March 4, 1970  Letter from the Tennessee authorities outlining the procedures for returning petitioner to Harris County for trial. It stated that Tennessee authorities would require that extradition be utilized, coupled with an executive agreement.

May 8, 1970  Petitioner was transferred to Federal prison at Texarkana.

September 15, 1970  Letter from petitioner to the District Attorney of Harris County which outlines the past history of petitioner's communications and informs the District Attorney that he is now in Federal prison and request "that your office remove all charges and detainer warrant from against me."

December 1, 1970  Petitioner filed a writ requesting the Supreme Court of Texas to issue an order to the District Attorney of Harris County to withdraw the detainer warrant and to enjoin the District Attorney from taking action on those warrants.

December 4, 1970  Letter from a representative of the Supreme Court of Texas to petitioner advising him that the Court had "no jurisdiction to grant you the relief you seek."

December 17, 1970  Letter from a representative for the Supreme Court of Texas to petitioner again informing petitioner that the Court has no jurisdiction to grant the relief sought, stating that the Supreme Court "cannot direct a trial court to withdraw detainers, see Pope v. Ferguson, copy of which is attached."

January 18, 1971  Petitioner filed a writ of habeas corpus in the Federal District Court of the Southern District of Texas.

March 12, 1971  The Federal District Court entered a judgment and an order dismissing the writ for failure to exhaust State remedies.

March 19, 1971  Petitioner filed a "Petition for Writ of Mandamus" with the Court of Criminal Appeals. Request order to have Harris County give petitioner a speedy trial.

April 6, 1971  Letter from a representative for the Supreme Court of Texas stating to petitioner that his Petition for Writ of Mandamus which he had mailed to the Clerk of this Court had been transferred to the Supreme Court because the Supreme Court

alone had jurisdiction to grant the requested relief of speedy trial and requested petitioner advise the Court in which District Court his case was pending.

April 14, 1971 (Date received) Letter from petitioner to the Supreme Court of Texas replying to the Court's April 6th letter stating the indictment numbers, but that he did not know in which Harris County District Court the indictments were pending. Petitioner's letter read in part: "This petitioner would ask that you regard this letter as a motion for dismissal."

April 14, 1971 A representative of the Supreme Court of Texas by letter again informed petitioner that the Court could not order dismissal of the indictments pending against him. He was again cited to Pope v. Ferguson. The Court again offered to assist in obtaining a speedy trial for petitioner and requested petitioner inform the Court if he still wished a speedy trial.

April 26, 1971 Petitioner filed his second Writ of Habeas Corpus with the Federal District Court of the Southern District of Texas requesting the dismissal of the charge against him.

May 13, 1971 Letter from the District Attorney of Harris County to petitioner. Informs petitioner that, due to the heavy docket, that the earliest he could be tried is July 21, 1971. He was also informed that he would be returned to Harris County upon his release from Federal prison and that an attorney would then be appointed for him.

May 19, 1971 Petitioner filed a second Petition for Writ of Mandamus with the Court of Criminal Appeals expressly seeking dismissal of the charge against him. Petitioner asserted that, due to the length of delay, that an offer of a speedy trial by the Supreme Court of Texas was "a bit ridiculous."

June 2, 1971 Letter from the Administrative Assistant of the Court of Criminal Appeals again explaining that neither that Court nor the Supreme Court could grant the relief of dismissal. He informed petitioner that a speedy trial could be obtained if so desired.

June 14, 1971 Petitioner was returned to Harris County and an attorney was appointed for him.

July 12, 1971 Pretrial motion heard.

July 20, 1971 Federal District Court dismissed writ because the petitioner was now in Harris County and the State Court could decide the speedy trial issue.

July 21, 1971 Second pretrial motion heard.

July 22, 1971 Trial on the merits.