487 So.2d 987 (1986)
Paul HAYES, alias
v.
STATE.
4 Div. 436.
Court of Criminal Appeals of Alabama.
January 7, 1986.
Rehearing Denied February 12, 1986.
Certiorari Denied May 2, 1986.
*988 Donald F. Colquett, Opp, for appellant.
Charles A. Graddick, Atty. Gen., and David B. Karn, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-588.
PATTERSON, Judge.
The appellant, Paul Hayes, was indicted and convicted of the offense of theft of property in the first degree as proscribed by § 13A-8-3, Code of Alabama 1975. As a result, he was sentenced as a habitual offender with two prior felony convictions to imprisonment for a term of life.
Specifically, the jury found Hayes guilty of the theft of a 1970 Buick Skylark automobile, belonging to Greg Wayne Howard. At trial, Mr. Howard testified that he first met Hayes at the county jail on one of the Tuesdays that he was there preaching to the inmates. He further explained that he let Hayes and his wife, Kathy, stay at his apartment for a week or two, but that they had left about a week prior to the disappearance of his automobile. Mr. Howard stated that when he went outside on the morning of September 27 or 28, 1981, his car, which had been parked in front of his apartment, was gone; that his keys had been inside his apartment, but that there were signs that someone had come through a window; and that, although he had given Kathy permission to use his car on several occasions, and although he had seen Kathy on the evening prior to the car's disappearance, *989 he had given no one permission at the time it disappeared. Finally, he testified that his car was returned to him in October by Deputy White.
Deputy White testified that he went to Oklahoma and picked up Hayes; that he also picked up a female prisoner; and that Howard's father took possession of Howard's automobile, which was in an impound yard in Sayre, Oklahoma.
Officer Shaw of the Opp Police Department testified that, on October 20, 1981, after Hayes had been given his Miranda warnings and had signed a waiver of his rights, he gave a statement. According to the officer, Hayes
"stated that it was late at night or in the early morning hours on the twenty-seventh of September of '81, that [he and his wife] got the car from the apartment.... He said that they took Greg's car keys from Greg's apartment on Stewart Street in Opp. Paul was staying with Greg at the apartment at that time. He said that they took the Buick Skylark from in front of the apartment and drove it all over the place. He said that they had stopped in Texas to get some gas and that they had driven off without paying for it. The law got after them and chase them into Oklahoma and caught. He said that they picked up some hitchhikers when the law got after them and the law started shooting at them. Kathy was driving the car and that she got scared and pulled over."
On cross-examination, Officer Shaw testified that, after Hayes's confession, a deputy sheriff told him that the sheriff had offered Hayes and his wife a deal whereby they could go to Georgia; however, no such deal or offer was made in his presence.
The only issue requiring our attention is whether Hayes was denied his constitutional right to a speedy trial. "We start with the statement that the resolution of this issue must be based on the facts contained in the record and the facts, as alleged, leave much to be desired as we consider appellant's contentions." Slaughter v. State, 377 So.2d 625, 625 (Ala.Cr.App.), rev'd, 377 So.2d 632 (Ala.1979).
A chronology of events preceding Hayes's ultimate trial date, as revealed by testimony, exhibits, and the case action summary, is as follows:
September 28, 1981, the District Court of Covington County issued a warrant of arrest for Hayes on the charge of theft of property in the first degree.
October 17, 1981, Hayes was arrested and incarcerated (as reflected by the execution of the arrest warrant).
January 18, 1982, Hayes was indicted by the Covington County Grand Jury.
February 8, 1982, Hayes was appointed counsel, arraigned, and released on bond.
April 12 and May 24, 1982, alias writs of arrest were issued. In addition, forfeiture for Hayes's bond was entered.
June 13, 1984, Hayes was again incarcerated on the instant charge.
August 27, 1984, the case was continued on motion of Hayes.
September 24, 1984, the case was continued by agreement.
October 10, 1984, Hayes filed a motion to dismiss for want of prosecution.
October 22, 1984, motion for discovery filed and cause continued by motion of Hayes.
November 9, 1984, after a hearing, the motion to dismiss was denied.
November 26, 1984, a jury found Hayes guilty as charged.
During the hearing on the motion to dismiss, Hayes testified to the following:
He was arrested in Oklahoma and extradited back to Alabama to face the present charges. On February 8, immediately after his appearance at arraignment, he met with Sheriff Chambers at the jail to sign an appearance bond for his release. His wife was also present. The bond had already been signed outside his presence by two other persons. The signatures were purportedly those of his in-laws, but Hayes recognized them as being forged, so he *990 refused to sign the bond. Sheriff Chambers told him to sign. The sheriff also told him "to get out of the State of Alabama and don't worry about the charges, that they would not be brought up against [him] just as long as [he] stayed out of the State of Alabama." So Hayes went to Harrison County, Georgia and did not return, because he relied on Sheriff Chambers's statement.
While in Harrison County, during 1982, Hayes was arrested by the Sheriff on behalf of Covington County; but he was released. However, he was again arrested in 1982 on the Covington County charge. Hayes was also arrested for subsequent offenses committed in Georgia: on April 8, 1982, for the offense of first degree forgery, which occurred February 26, 1982; on July 28, 1982, for forgery; and on January 7, 1983, for forgery. Hayes pleaded guilty to all three. He received probation for the first two offenses, but this probation was revoked on February 9, 1983. When he pleaded guilty in 1984, on the third charge, he received a sentence of ten years, five to be served in the penitentiary and five to be served on probation. On June 13, 1984, after Sheriff Chambers had been replaced by Sheriff Harrell, Hayes was returned to Alabama to answer the present charge.
Hayes also testified that, at some unspecified time, while living in Georgia, his wife called District Attorney Lanier and Hayes listened on an extension. (Prior to leaving Covington County for Georgia, his wife had two charges pending against her; she pleaded guilty to one and the other was dismissed.) In the conversation, the district attorney stated that "since [they] were already on probation in the State of Georgia and [they] had to do that, that he actually didn't see fit for [them] to be coming back over [there], seeing as how Mr. Chambers had already told [him] not to come back."
Hayes finally testified that, as a result of the time lapse, two material witnesses were unavailable: Bernice Sasser Mitchell, whose whereabouts are unknown, and his wife, who would have to get permission to leave Georgia, since she is serving probation and parole.
Mr. Richard White, who was chief deputy sheriff in 1982, testified to the following:
Sometime during 1982, he received a call from someone with the Harrison County Sheriff's Department, who inquired if Hayes and his wife were wanted in Alabama. (He thought he had previously sent copies of the pending indictments to the sheriff's department.) He told them that they did want them. He was led to believe that the Hayeses were not incarcerated at that time, but that they could be picked up. After picking up "a subject," the Harrison County authorities called White again and wanted to know what the Covington County authorities proposed to do. White responded that he would call back after talking with Sheriff Chambers. When he informed Chambers of the situation, Chambers said that "if [Hayes] can't be brought backif he isn't brought back, he can't be tried, can he." White then called the Harrison County office and explained that they were not interested.
Mr. Glen Chambers, former sheriff, then testified as follows:
"Q. [District Attorney] Do you recall back in 1982, specifically February the 8th of 1982, having a conversation with Paul Hayes concerning what he should do if he were allowed to be placed on bond?
"A. No, sir, I don't.
"Q. You heard his testimony earlier?
"A. Yes, sir.
"Q. Did you have a conversation with him and tell him that he could leave this state and never come back?
"A. No, sir."
On direct, Mr. Chambers also testified that, if a question arose about extradicting someone, he would talk to the District Attorney, but that the Chief Deputy usually handled such things.
On cross-examination, Mr. Chambers testified as follows:

*991 "Q. You don't recall that on the day thatdo you recall the day he made bond?
"A. No, sir, I don't.
"....
"Q. All right. So you had some sort of conversation with Paul Hayes on that date, did you not?
"A. Not necessarily, no.
"Q. Not necessarily, but did you?
"A. No, sir, I did not."
As the United States Supreme Court noted in Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972):
"[T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." (Footnote omitted.)
Thus, an "inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case...." Id. at 522, 92 S.Ct. at 2188. In adopting "a balancing test, in which the conduct of both the prosecution and the defendant are weighed," id. at 530, 92 S.Ct. at 2192, the Barker Court identified "some of the factors" which courts should assess in determining whether a particular defendant has been denied his right to a speedy trial: (a) length of delay; (b) the reasons for the delay; (c) the defendant's assertion of his right; and (d) prejudice to the defendant. Id.
A. Length of Delay
The protection of the Sixth Amendment is triggered when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Id. at 320, 92 S.Ct. at 463. See also Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (wherein the Court held that the arrest, if prior to the indictment, constitutes the initiation of prosecution). Thus, in the present case, the length of delay is calculated by determining the time which has elapsed from Hayes's arrest, when Hayes was designated an "accused," until his trial. This period is approximately three years, one month, and two weeks.
The Barker Court, in addition to designating the length of delay as a factor to be assessed, recognized it to be "to some extent a triggering mechanism." 407 U.S. at 530, 92 S.Ct. at 2192.
"Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."
Id. at 530-31, 92 S.Ct. at 2191-92 (footnote omitted).
Under the peculiar circumstances before us, we must inquire further into the reasons why Hayes was not tried more promptly. The delay is clearly disproportionate to the type of crime charged. The offense was not complex; rather it was akin to an ordinary street crime. See Turner v. State, 378 So.2d 1173, 1177 (Ala. Cr.App.), cert. denied, 378 So.2d 1182 (Ala. 1979) (assault with intent to murder). "Since this delay is `patently offensive' we must determine whether it is `unjustified.'" Corn v. State, 387 So.2d 275, 277 (Ala.Cr. App.), cert. denied, 387 So.2d 280 (Ala. 1980) (quoting Prince v. Alabama, 507 F.2d 693, 702 (5th Cir.), cert. denied, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975)). The delay was considerable; thus *992 this factor is to be weighed against the prosecution.
B. Reasons for the Delay
The prosecution bears the burden of justifying the delay. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. In the instant case, the reasons for the delay are varied, but we conclude that the bulk of the delay was chargeable to the State's actions.
Delays have been categorized as follows: a deliberate delay by the government, a negligent delay and a justified delay. Id. For a discussion of these reasons and examples of each kind, see United States v. Avalos, 541 F.2d 1100, 1111-14 (5th Cir.1976), cert. denied, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); United States v. Castellana, 461 F.Supp. 233, 238-39 (M.D.Fla.1978). Each kind of delay is weighted differently:
"A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason ... should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason ... should serve to justify appropriate delay."
407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted).
Looking at the facts before us, we conclude that the only delay clearly not attributable to the State is the time period from August 27, 1984, until November 9, 1984. During this period, Hayes filed several motions, requiring consideration, and he also moved for one continuance and agreed to another continuance. These were justifiable delays. See United States v. Castellana.
The determination of the reasons for the remaining delay is particularly difficult, especially since the trial court failed to make any findings of fact. Nevertheless, putting aside the fact that the evidence does not unequivocally denominate Hayes as a fugitive from the issuance of the first bench warrant until the Covington County authorities were notified of his whereabouts in Georgia (a period of no more than nine months) and, thus, does not positively establish this time lapse to be attributable to Hayes, we find that the delay of 27½ months is totally without excuse. Rather, the clear implication of the record is that the delay is attributable to the State's intentional decision to leave the indictment pending without any action; the evidence reflects an official indifference to the necessity of a speedy trial. The chief deputy sheriff's testimony was undisputed; the evidence unquestionably establishes that the Georgia authorities, within 11 months of Hayes's release on bond, notified the sheriff's office of Hayes's whereabouts and the sheriff instructed the chief deputy to inform the Georgia authorities that Hayes was not wanted for prosecution in Alabama. Former Sheriff Chambers was not questioned about these facts. In addition, the district attorney did not testify to rebut Hayes's testimony that the district attorney informed Hayes's wife that he did not "see fit" for her and Hayes to return to Alabama, especially since the sheriff had already told Hayes not to come back. Rather, implicit in the prosecutor's cross-examination of Hayes is the inference that the call to Hayes's wife did in fact occur. We cannot disregard the Chief deputy's testimony; the release of Hayes by the Georgia authorities, which corroborates the chief deputy's testimony; the failure of the sheriff to rebut the chief deputy's testimony; and the failure of the district attorney to reveal his version of the phone call. Thus, we have before us the undisputed facts that the Covington County authorities refused custody during the early portion of the total delay and that the district attorney clearly indicated, through the conversation with Hayes's wife, that the State of Alabama no longer had any desire to prosecute Hayes. After weighing this evidence of the conduct of the prosecution against the conduct of Hayes, we find the majority of the delay to be deliberate and inexcusable *993 thus warranting heavy weight against the State.
The State took no steps to obtain Hayes's appearance. As recognized in Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969), upon the defendant's demand, the State has a "constitutional duty to make a diligent, goodfaith effort" to bring the defendant to trial. See also Slaughter v. State, 377 So.2d 632 (Ala. 1979); McCallum v. State, 407 So.2d 865, 867 (Ala.Cr.App.1981) (wherein the court held that this duty was triggered when county officials became aware that the defendant was in federal custody).
"The ... government as a wholeexecutive, judicial, and legislativeis governed by the strictures of the Speedy Trial Clause. All three branches of government have a duty to insure that rights of criminal defendants to speedy trials are not abrogated. Dickey v. Florida, 398 U.S. 30, 51 [90 S.Ct. 1564, 1575, 26 L.Ed.2d 26] ... (1970) (Brennan, J., concurring)."
United States v. Loud Hawk, 564 F.Supp. 691, 699 (D.Or.1983) (footnote omitted).
In addition to refusing custody of Hayes sometime in 1982, the Covington County authorities failed to exercise good-faith efforts to locate Hayes. The evidence shows that Hayes was also in the custody of Georgia officials on two other occasions in 1982, and on January 7, 1983, pursuant to arrest for offenses committed in Georgia. Moreover, he was in continuous custody from February 9, 1983. Although Hayes's whereabouts in between the periods of custody were probably unknown, his numerous incarcerations offered the State abundant opportunity to gain custody of him. Thus, the duty to exert an affirmative effort to bring Hayes back to Alabama for trial was not exercised. Cf. Wilson v. State, 407 So.2d 584 (Ala.Cr.App.1981). Although under other circumstances, such inaction might constitute negligent conduct, which would be given less weight than deliberate misconduct, see, e.g., McCallum v. State; Wilson v. State, the instant facts in their entirety support no other conclusion than that such inaction was deliberate.
C. The Defendant's Assertion of his Right
In determining this factor, we are guided by the following observations of the former Fifth Circuit Court of Appeals in Prince v. Alabama, 507 F.2d 693, 702-03 (5th Cir. 1975), cert. denied, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975):[1]
"While the Court [in Barker] indicated that the absolute failure of the defendant to assert his right would `make it difficult for [him] to prove that he was denied a speedy trial,' the Court emphasized that the burden was upon the prosecution to show that the failure of the defendant to assert his right was a knowing failure:
"`In ruling that a defendant has some responsibility to assert a speedy trial claim, we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. 407 U.S. at 529 [92 S.Ct. at 2191]....'
"... [W]e are further guided by Barker and by the Court's subsequent decision in Strunk v. United States, 1973, 412 U.S. 434 [93 S.Ct. 2260, 37 L.Ed.2d 56 (1973)].... In Barker, the Court noted that a flexible approach to determination whether the defendant had asserted his speedy trial right
"`would permit ... a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. 407 U.S. at 529 [92 S.Ct. at 2191]....'

*994 "In Strunk, the Court gave an implicit indication that the focus of the assertion inquiry might properly be directed toward the question whether the prosecution is put `on notice' of the defendant's speedy trial claim....
"We interpret these rulings as an indication that the courts should take a liberal view of convict-defendant's attempts to contact the prosecutors and courts in other jurisdictions regarding charges pending against them there. Such an approach would be consistent both with the concept that chargeable failure to assert a constitutional right must be knowing and intelligent, Johnson v. Zerbst, [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)], and with the realities of a defendant's incarceration, often distant from the prosecuting state and without the effective assistance of counsel."
The situation before us is not a case in which the defendant made no inquiry about the status of his case, hoping that the prosecution would overlook his case or that, unreminded, the prosecution's delay would ripen into a period that would invite release on the Sixth Amendment ground. Compare Look v. Amaral, 725 F.2d 4 (1st Cir.1984). Rather, we find that Hayes put the prosecution "on notice" when he, through his wife, made an inquiry into the pending charges. Although the context of the telephone conversation is not known, it is clear that the call was a communication indicating Hayes wanted some disposition of his case. This inquiry was enough to serve as an indication that, from Hayes's perspective, a trial was desirable.
Moreover, we find that the Covington County authorities have not shown that Hayes's failure to assert his right at any other time was a knowing failure. After the district attorney informed Hayes's wife that "he actually didn't see fit for [them] to be coming back," Hayes could not fairly have been expected to assert his right to a speedy trial. This is akin to the situation presented in Taylor v. State, 429 So.2d 1172 (Ala.Cr.App.1983), cert. denied, 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983). There, the grand jury no-billed the indictment against the defendant, who was incarcerated due to revocation of parole. The prison hold was withdrawn, and when he was released from prison, he was not restricted by a detainer. In holding that the defendant had no reason to suspect that any charge remained or that any further action had been taken on the charge, we stated, "An accused cannot assert his right to a speedy trial where he has no knowledge of the indictment." Id. at 1175. See also Barker, 407 U.S. at 528, fn. 28, 92 S.Ct. at 2191, fn. 28 (wherein the Court cited with approval the American Bar Association's explanation of its rejection of the demand-waiver rule: "`One reason for this position is that there are a number of situations, such as where the defendant is unaware of the charge or where the defendant is without counsel, in which it is unfair to require a demand....'"). Likewise, we find no reason in the instant case for Hayes to have suspected that the charge remained. He had been told, in essence, to the contrary by the chief prosecutor of the county and he had been released when picked up on the Alabama charge. Moreover, there is no evidence that the prosecution had lodged any hold against Hayes, except for the initial one upon which the Georgia authorities acted; the evidence shows no interaction with the Alabama authorities when Hayes was arrested in Georgia on three separate occasions. We recognize that a defendant has "some responsibility to assert a speedy trial claim." Barker, 407 U.S. at 529, 92 S.Ct. at 2191. However, we also recognize that "[a] defendant has no duty to bring himself to trial; the State has that duty...." Id. at 527, 92 S.Ct. at 2190 (footnote omitted). This responsibility is "out of fairness to the accused and to protect the community interests in a speedy trial." Dickey v. Florida, 398 U.S. 30, 50, 90 S.Ct. 1564, 1575, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring). Hayes's silence, under the circumstances, does not render his position less viable. We think that the response of the State must be considered and, in fact, overshadows all else. Here, Hayes's one inquiry *995 was met not only with inaction, but with advice to stay in Georgia. Thus, in balancing their respective conduct, this factor weighs against the prosecution and in favor of Hayes.
D. Prejudice to the Defendant
Hayes attempts to establish a showing of prejudice by alleging the inability to call two witnesses in his behalf. However, we observe the following:
"There was no evidence, other than the defendant's own testimony, that these alleged witnesses were no longer available.... There was absolutely no showing of the particular facts to which they would allegedly testify. See United States v. Mays, 549 F.2d 670, 677 (9th Cir.1977)."
Corn v. State, 387 So.2d at 279. See also Wade v. State, 381 So.2d 1057, 1061 (Ala. Cr.App.), cert. denied, 381 So.2d 1062 (Ala. 1980).
Nevertheless, Hayes's failure to prove prejudice is not fatal under the particular circumstances before us. In Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973), the Court held that it was "fundamental error" to say that a defendant cannot prevail unless he makes an affirmative showing of prejudice. In noting that Barker v. Wingo expressly rejected this premise, the Moore Court quoted the following passage from Barker:
"`We regard none of the four factors... as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.' 407 U.S., at 533 [92 S.Ct. at 2193] (footnote omitted)."
414 U.S. at 26, 94 S.Ct. at 189. See also Blake v. State, 469 So.2d 1301, 1304 (Ala. 1985). It has been observed, however, that courts are not in agreement about just when a defendant will prevail without showing prejudice; some courts hold that the defendant must show bad motives by the prosecutor, some hold that the other three Barker factors must be in the defendant's favor, and some have said that they must weigh heavily in his favor. 2 W. LaFave and J. Israel, Criminal Procedure, § 18.2(e) (1984).
The Alabama Court of Criminal Appeals has adopted the delineation by the former United States Court of Appeals, Fifth Circuit, of the circumstances in which no showing of prejudice is required. See, e.g., Wilson v. State, 407 So.2d at 588; Turner v. State, 378 So.2d at 1179. See also Prince v. State, 354 So.2d 1186, 1192 (Ala. Cr.App.1977), cert. denied, 354 So.2d 1193 (Ala.1978). The former Fifth Circuit held that "there must be some point of coalescence of the other three factors in a movant's favor, at which prejudiceeither actual or presumedbecomes totally irrelevant." Hoskins v. Wainwright, 485 F.2d 1186, 1192 (1973). See also United States v. Dennard, 722 F.2d 1510, 1513 (11th Cir. 1984); United States v. Avalos, 541 F.2d at 1116; Prince v. Alabama, 507 F.2d at 706-07. The rationale for dispensing with the prejudice requirement is set forth in Turner v. Estelle, 515 F.2d 853, 858-59 (5th Cir.1975), cert. denied, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976), as follows:
"The reason for dispensing with the prejudice requirement entirely when the other three factors point heavily toward a violation of speedy trial is deterrence: the prosecution should not be permitted to engage in inexcusable misconduct on the hope that the defendant will not be *996 able to make out a case of prejudice. Where such misconduct has occurred, the state cannot complain that the legitimate interests of its criminal justice system, being pursued in good faith, are being sacrificed because of an honest mistake in a case in which no ultimate harm has been done. Mindful of the difficulties sometimes encountered in weighing prejudice, this Court has concluded that it will not undertake such an inquiry where the prosecutorial error to be forgiven by a finding of no prejudice is flagrant and inexcusable:
"At some juncture in a criminal prosecution the government's lengthy, inexplicable delay, in the face of vigorous demands for an immediate trial, is so offensive to the Sixth Amendment's guarantee of a speedy trial that a Court must intervene regardless of whether the defendant has been incarcerated, subjected to public scorn and obloquy, or impaired in his ability to defend himself.
Hoskins v. Wainwright, supra, 485 F.2d at 1189 n. 3." (footnote omitted).
We find, in the present case, that prejudice is totally irrelevant.[2] We find that the other three factors are heavily weighted in favor of Hayes. The delay is clearly excessive in light of the type of case being prosecuted; although we find no evidence of intent by the State to impair Hayes's defense, the delay was unquestionably inexcusable and purposeful; and the prosecution has failed to show that Hayes's failure to assert a claim was knowing.
We admit that this is a close case and we are aware that the consequence of holding that Hayes was denied his right to speedy trial is the dismissal of the indictment, which is "a serious consequence." 407 U.S. at 522, 92 S.Ct. at 2188. See also Blake v. State, 469 So.2d at 1304. However, the conduct of the State is not to be tolerated. The State had an affirmative obligation to Hayes and to the public generally to bring this matter to trial promptly. Not only did the State disregard its obligation to Hayes, but it failed to protect the societal interests in providing a speedy trial, among them society's interest in reducing the risk of further crimes committed by defendants free on bond. See Barker, 407 U.S. at 519-20, 92 S.Ct. at 2186-87. "Article I, § 6, of the Alabama Constitution and the Sixth Amendment to the United States Constitution, will not sanction such prosecutorial conduct." Turner v. State, 378 So.2d at 1178.
Accordingly, this cause is due to be reversed and rendered for the defendant.
REVERSED AND RENDERED.
All Judges concur.
NOTES
[1] We note that the facts that Prince was incarcerated and was without counsel do not undermine our application of the general principles espoused in Prince.
[2] We do not find this conclusion to be affected by our Supreme Court's holding in Blake v. State, 469 So.2d at 1303 (Ala.1985), that prejudice will not be assumed where the delay is deliberate, but only consists of nine and one-half months.