Rel: June 26, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2023-0629

_____

## State of Alabama

## v.

## Jeri Bonar

## Appeal from Jefferson Circuit Court
## (DC-15-3187 and DC-15-3188)

<u>On Return to Remand</u>

MINOR, Judge.[1]

In this appeal we consider whether the Jefferson Circuit Court erred in granting Jeri Bonar's motion to dismiss the cases against her. We hold that the circuit court erred by finding that the State violated

---

[1]This case was previously assigned to another member of this Court before it was reassigned to Judge Minor.

Bonar's right to a speedy trial. Thus, we reverse the circuit court's judgment and remand the cause for further proceedings.

Facts and Procedural History

Bonar was arrested in April 2015 on charges of second-degree possession of a forged instrument, see § 13A-8-3, Ala. Code 1975, and first-degree theft of property, see § 13A-9-6, Ala. Code 1975. Bonar applied for admission to the mental-health court, and, over the State's objection, the Jefferson District Court released her to a residential substance-abuse facility. By agreement, the district court in September 2015 transferred Bonar's cases to "Judge Stephen Wallace for Mental Health Court." Judge Wallace set a hearing in December 2015 to determine Bonar's eligibility for mental-health court, but Bonar failed to appear. Noting Bonar's failure to appear and her failure to "otherwise cooperate with the mental health court staff," Judge Wallace directed the clerk to issue an alias warrant for her arrest. (C. 14.) In May 2017, Judge Wallace bound the cases "over to the circuit court to await action by the grand jury." (C. 15.)

On February 12, 2018, the State moved to recall the alias writ of arrest for Bonar, noting that the grand jury had indicted Bonar and that

"the case is now pending in the Circuit Court of Jefferson County." (C. 73.) Two days later, Judge Wallace granted that motion.

In December 2021, Bonar's counsel moved to dismiss the charges, asserting that the State had violated her right to a speedy trial. Circuit Judge Shanta Owens denied that motion.

In August 2023, Bonar's counsel moved to dismiss the charges, again asserting that Bonar's right to a speedy trial had been violated. Circuit Judge Kandice E. Pickett held a hearing on the motion. The only evidence presented at the hearing were the records in the case file, and counsel for the State and for Bonar presented arguments. Bonar was not present. After the hearing, Judge Pickett granted Bonar's motion to dismiss. The State timely appealed. See Rule 15.7, Ala. R. Crim. P.

Analysis

On appeal, the State argues (1) that Judge Pickett lacked the authority to dismiss the indictment against Bonar and (2) that, even if Judge Pickett had the authority to dismiss the indictment, she erred in doing so.

I.    The Jefferson Circuit Court, not the District Court, dismissed the indictment.

The State's first argument hinges on its confusion about which court granted Bonar's motion to dismiss—the Jefferson District Court or the Jefferson Circuit Court. The State's confusion about this issue stems from references in the record to both courts.

Bonar's December 2021 motion to dismiss was styled "In the Circuit Court of Jefferson County, Alabama," but the digital stamp states that it was filed in the "District Court of Jefferson County, Alabama." In denying that motion, Judge Owens signed the order as "District Judge," and the digital stamp shows that it was filed in the "District Court of Jefferson County, Alabama."

Bonar's August 2023 motion to dismiss, as well as the State's response, is styled "In the Circuit Court of Jefferson County, Alabama," but the digital stamp states, "District Court of Jefferson County, Alabama." The reporter's transcript of the August 2023 hearing on Bonar's motion states that the hearing was "In the Circuit Court of Jefferson County[,] Tenth Judicial Circuit[,] Criminal Division," and Judge Pickett, a circuit judge in the Tenth Judicial Circuit, signed the order granting Bonar's motion as a "circuit judge." But the style of the

4

order and the digital stamp state "District Court of Jefferson County, Alabama."

First, we point out that the State's assertion on appeal that the district court, rather than the circuit court, dismissed Bonar's indictment is inconsistent with its position in the lower court and with its assertion of its right to appeal to this Court under Rule 15.7, Ala. R. Crim. P. Cf. Fountain v. State, 586 So. 2d 277, 282 (Ala. Crim. App. 1991) ("A party cannot assume inconsistent positions at trial and on appeal …. Leverett v. State, 462 So. 2d 972 (Ala. Cr. App. 1984) …."). Although the digital stamp states "District Court," the State's response to Bonar's motion to dismiss and the State's notice of appeal are styled "In the Circuit Court of Jefferson County, Alabama," and the notice of appeal states that the State is appealing the judgment to this Court under Rule 15.7, Ala. R. Crim. P. Under that rule, the State has the right to appeal, under certain circumstances, "a pre-trial order of the circuit court"—but the State has no right under Rule 15.7 to appeal a judgment of the district court. Cf. Rule 30.1(c), Ala. R. Crim. P. (giving the State or a municipality a right to appeal certain decisions of the district court to the circuit court or to this Court under Rule 30.2). Also, although the docketing statement for

this Court and the Reporter's Transcript Order have the digital stamp "District Court," the State checked the box "Circuit Court" on those forms. (C. 23-25.)

This Court faced a similar situation in State v. MacGrady, 410 So. 3d 1158 (Ala. Crim. App. 2024). That case involved the same appellant (the State), the same county (Jefferson), and a similar procedural posture (a pretrial dismissal on speedy-trial grounds although the record in MacGrady showed only that the case had been bound over to the grand jury, not that the grand jury had indicted MacGrady). Addressing whether the district or the circuit court had decided the motion to dismiss, we stated:

> "Judge Shanta Craig Owens, a Jefferson Circuit Court Judge, signed the orders in this case as a 'District Judge.' Further, MacGrady's motion and amended motion purported to have been filed in the circuit court, yet the trial court's digital stamp indicated that the motions had been filed in the district court.
>
> "Because the case had been bound over to the grand jury before the motion to dismiss had been granted, the district court no longer had jurisdiction of the case. See State v. Brown, 259 So. 3d 655, 659 (Ala. 2018) ('The district court does not retain authority over a case once the case has been bound over to the grand jury.'). Accordingly, this Court remanded the case on April 15, 2024, for Judge Owens to clarify whether she was sitting as a circuit judge or acting as a district judge at the time she granted MacGrady's motion to dismiss.

6

"On April 16, 2024, Judge Owens issued an order stating that she was sitting as a circuit judge when she granted MacGrady's motion to dismiss. Presumably, the case still carries a district court case number because the case was dismissed before MacGrady was indicted."

410 So. 3d at 1160 n.1.

Consistent with our approach in MacGrady, we remanded by order this case for Judge Pickett to clarify whether she was sitting as a circuit judge or acting as a district judge when she granted Bonar's motion to dismiss. Bonar v. State, [No. CR-2023-0629, June 30, 2025] ___ So. 3d ___ (Ala. Crim. App. 2025). Judge Anderson dissented from this Court's judgment remanding Bonar's case.[2] In Judge Anderson's view, this Court should not consider "Judge Kandice Pickett's subjective thoughts about her status in the proceedings below," and he asserted that this Court's decision to remand the case "overlook[ed] our primary responsibility to resolve issues involving subject-matter jurisdiction." ___ So. 3d at ___.

On remand, Judge Pickett found that in May 2017 Bonar's case was bound over to the grand jury and that the State moved to recall the alias

---

[2]Judge Anderson was not a member of this Court when it decided MacGrady.

7

writ in February 2018 based on the grand jury's returning an indictment.

Judge Pickett also found that, in August 2023, she

"was acting as duty judge and held a hearing on the motion to dismiss for want of speedy trial filed by [Bonar].

"The court at the time of the hearing was acting in [its] capacity as a circuit court judge when it ruled on the speedy trial motion …."

(Record on Return to Remand, C. 17.)

The record on return to remand thus confirms Bonar's assertion in her brief on original submission that Judge Pickett was acting as the duty judge in circuit court when she considered and ruled on Bonar's motion to dismiss.[3] (Bonar's brief, p. 5.) Despite Judge Anderson's characterization of our remand order as seeking "subjective thoughts," the State has filed no brief on return to remand challenging Judge Pickett's findings, and we see no reason to question the objectivity of those findings.

As in MacGrady, the primary causes of confusion about which court exercised jurisdiction over Bonar's motion are the references to the

_____

[3]In its reply brief, the State recognized Bonar's point that Judge Pickett was a circuit judge acting as a duty judge. (State's reply brief, pp. 3-4.)

8

"District Court" on the digital filing stamps and the district-court case numbers assigned to her cases. But we conclude, as we did in MacGrady, that, despite the digital stamps and the district-court case numbers, the circuit court granted the motion to dismiss the indictment.

In MacGrady this Court presumed that MacGrady's case still had "a district court case number because the case was dismissed before MacGrady was indicted." 410 So. 3d at 1160 n.1. We recognized, however, that the speedy-trial motion and the order dismissing the case were filed in the circuit court, despite references to the district court such as the digital stamp. Our reasoning for that conclusion was twofold: (1) "The district court does not retain authority over a case once the case has been bound over to the grand jury," State v. Brown, 259 So. 3d 655, 659 (Ala. 2018), and (2) Judge Owens found that she had heard the motion to dismiss in her capacity as a circuit judge. See MacGrady, 410 So. 3d at 1160 n.1.

Both reasons are present here. When Bonar filed her August 2023 motion to dismiss, which along with the State's response was styled "In the Circuit Court of Jefferson County," her cases had already been bound over to the grand jury (and the grand jury had returned an indictment).

9

Thus, regardless of the case-number designations,[4] the district court no longer had jurisdiction. Brown, supra; MacGrady, supra. Cf. Horton v. State, 369 So. 3d 1128, 1134 (Ala. Crim. App. 2022) ("We acknowledge Horton's argument that, although his right to a speedy trial attached when he was arrested, it would have been futile to assert that right in the district court because, he says, the district court—as a court of limited criminal jurisdiction, see § 12-12-32, Ala. Code 1975—had no authority to dismiss the case on that basis. However, the district court lost its limited jurisdiction over Horton's case once the case was bound over to the grand jury on July 27, 2017. See State v. Brown, 259 So. 3d 655, 659 (Ala. 2018) ('The district court does not retain authority over a case once the case has been bound over to the grand jury.'); and Rule 5.4(e), Ala. R. Crim. P. ('Within fourteen (14) days after waiver or conclusion of the preliminary hearing, all original papers and records shall be transmitted

_____

[4]The record does not reveal why the Jefferson Circuit Clerk has not assigned circuit-court case numbers to Bonar's cases. No one disputes, however, that the cases were bound over to the grand jury and that the grand jury returned an indictment. Thus, the circuit court would have had the case files long before Bonar moved to dismiss the indictment. See Rule 5.4, Ala. R. Crim. P. ("Within 14 days after waiver or conclusion of the preliminary hearing, all original papers and records shall be transmitted to the circuit court.").

to the circuit court.').").[5] And when she considered the motion and ruled on it, Judge Pickett did so as a circuit judge, not as a district judge.

For these reasons, we hold that the State is due no relief on its argument that the Jefferson District Court, rather than the Jefferson Circuit Court, dismissed Bonar's indictment.

II.    <u>The Jefferson Circuit Court erred by finding that the delay violated Bonar's right to a speedy trial.</u>

We now consider the State's contention that Judge Pickett erred in granting Bonar's motion to dismiss the indictment. The relevant facts before us are undisputed. Thus, " '[t]he only question to be decided is a question of law, and our review is therefore de novo.' <u>Ex parte Heard</u>, 999

---

[5]This Court has rejected the notion that a circuit court lacks authority to act in a felony case once it has been bound over to the grand jury:

> "It is clear from his briefs to this Court that Horton believes a circuit court has no authority to act in a felony case until an indictment is returned. This belief is incorrect and, if it were true, would result in a period of 'legal limbo' between a preliminary hearing and an indictment in which no court has the authority to act in a felony case. <u>See</u> § 12-11-30(2), Ala. Code 1975."

<u>Horton v. State</u>, 369 So. 3d 1128, 1134 n.2 (Ala. Crim. App. 2022).

11

So. 2d 978, 980 (Ala. 2003) (citing Ex parte Key, 890 So. 2d 1056, 1059

(Ala. 2003))." MacGrady, 410 So. 3d at 1160.

The Alabama Supreme Court has stated:

"An accused's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution[3] and by Art. I, § 6, of the Alabama Constitution, 1901.[4] ... [A]n evaluation of an accused's speedy-trial claim requires us to balance the four factors the United States Supreme Court set forth in Barker [v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)]: '[l]ength of delay, the reason for the delay, the defendant's assertion of [her] right, and prejudice to the defendant.' 407 U.S. at 530, 92 S. Ct. 2182 (footnote omitted). See also Ex parte Carrell, 565 So. 2d [104,] 105 [(Ala. 1990)]. 'A single factor is not necessarily determinative, because this is a "balancing test, in which the conduct of both the prosecution and the defense are weighed."' Ex parte Clopton, 656 So. 2d [1243,] 1245 [(Ala. 1995)] (quoting Barker, 407 U.S. at 530, 92 S. Ct. 2182).

"_____

"[3]'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ....' U.S. Const. amend. VI.

"[4]'[I]n all prosecutions by indictment, [the accused has a right to] a speedy, public trial ....' Art. I, § 6, Ala. Const. 1901. ..."

Ex parte Walker, 928 So. 2d 259, 263 (Ala. 2005). We examine these

factors in turn.

12

A. <u>The length of the delay is presumptively prejudicial under Barker.</u>

The first <u>Barker</u> factor—the length of the delay—is a threshold inquiry to see "whether the length of the delay is '"presumptively prejudicial."'" <u>Ex parte Walker</u>, 928 So. 2d at 263 (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 652 (1992), quoting in turn <u>Barker v. Wingo</u>, 407 U.S. 514, 530-31 (1972)). If the length of the delay is presumptively prejudicial, we examine the remaining three <u>Barker</u> factors. <u>Id.</u> at 264.

"In Alabama, '[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant—whichever is earlier—to the date of the trial.'" <u>Ex parte Walker</u>, 928 So. 2d at 264 (quoting <u>Roberson v. State</u>, 864 So. 2d 379, 394 (Ala. Crim. App. 2002)). The delay of more than 8 years and 4 months—from April 3, 2015, the date of Bonar's arrest, until August 18, 2023, when the circuit court granted Bonar's motion to dismiss—is presumptively prejudicial. We thus examine the remaining <u>Barker</u> factors.[6] <u>Ex parte Walker</u>, 928 So. 2d at 264-65 (finding a 50-month delay presumptively prejudicial).

---

[6]The State argues that Bonar "essentially waived her right to a speedy trial" by, the State says, "absenting herself from the jurisdiction." (State's brief, p. 15.) In support of this argument, the State describes Bonar as a "fugitive" and cites her waiting more than six years to assert

B. <u>Five years of delay caused by the State's negligence weighs against the State but not heavily so.</u>

"The State has the burden of justifying the delay. <u>See Barker</u>, 407 U.S. at 531, 92 S. Ct. 2182; <u>Steeley v. City of Gadsden</u>, 533 So. 2d 671, 680 (Ala. Crim. App. 1988). <u>Barker</u> recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531, 92 S. Ct. 2182. Courts assign different weight to different reasons for delay. Deliberate delay is 'weighted heavily' against the State. 407 U.S. at 531, 92 S. Ct. 2182. Deliberate delay includes an 'attempt to delay the trial in order to hamper the defense' or '"to gain some tactical advantage over (defendants) or to harass them."' 407 U.S. at 531 & n.32, 92 S. Ct. 2182 (quoting <u>United States v. Marion</u>, 404 U.S. 307, 325, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. <u>Barker</u>, 407 U.S. at 531, 92 S. Ct. 2182; <u>Ex parte Carrell</u>, 565 So. 2d [104,] 108 [(Ala. 1990)]. Justified delay—which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible—is not weighted against the State. <u>Barker</u>, 407 U.S. at 531, 92 S. Ct.

---

her right to a speedy trial. (State's brief, p. 19.) The State argues that we need not examine the remaining <u>Barker</u> factors. We disagree.

First, the State's argument on this point conflates the <u>Barker</u> analysis, seeking to use the second and third <u>Barker</u> factors (the reason for the delay and the assertion of the right) to end the inquiry at the first <u>Barker</u> factor. <u>Cf.</u> <u>State v. Williams</u>, [Ms. CR-2024-0124, Dec. 20, 2024] ___ So. 3d ___, ___ (Ala. Crim. App. 2024) (Minor, J., concurring part and concurring in the result). Second, although the record shows that Bonar failed to appear for a hearing, there is no affirmative finding that Bonar is a "fugitive." <u>Cf.</u> <u>Mozingo v. State</u>, 562 So. 2d 300, 304 (Ala. Crim. App. 1990) ("Our courts, too, have defined 'fugitive from justice.' All that is required is that the appellant was in the demanding State when the crime was committed, that he is now found in Alabama, and that he <u>refuses to return</u> to the demanding state." (emphasis added)).

14

2182; <u>Zumbado v. State</u>, 615 So. 2d 1223, 1234 (Ala. Crim. App. 1993) ('"Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of <u>Barker</u>."') (quoting <u>McCallum v. State</u>, 407 So. 2d 865, 868 (Ala. Crim. App. 1981))."

<u>Ex parte Walker</u>, 928 So. 2d at 265.

In its order, the circuit court found that the State's negligence caused the delay. (C. 19.) The circuit court found that the December 2021 denial of Bonar's motion to dismiss "served as notice to the State of the need to have [Bonar] served with the grand jury writ." (C. 19.) The circuit court also noted: "[T]he State provided no evidence of any attempt to serve [Bonar] with the grand jury writ or of any efforts by [Bonar] to avoid being served with the grand jury writ." (C. 19.)

Bonar's counsel stated at the August 2023 hearing that Bonar was contesting only the delay after the issuance of the indictment in February 2018. (R. 17 ("I'm not arguing about the delay from 2015. Since the warrant was recalled, since the grand jury writ has been issued in 2018, the delay serving her with those writs is excessive.").) Subtracting the time from Bonar's arrest in April 2015 until her indictment in February 2018 leaves a delay of roughly five and a half years. The record supports the circuit court's finding that this delay was due at least in part to the

State's negligence, although, as the State mentioned in its response to the motion and at the hearing, some of the delay during this time was based on the COVID-19 pandemic. (C. 86; R. 10.) In MacGrady, we stated:

"The State … argu[ed] below that the delay was justified because of the COVID-19 pandemic. Indeed, after recognizing that jury trials in Alabama were suspended by order of the Alabama Supreme Court from March 13, 2020, to September 14, 2020, because of the COVID-19 pandemic, this Court held in Quinnie v. State, 382 So. 3d 1275, 1280-81 (Ala. Crim. App. 2022), that the six months that had passed during the suspension of jury trials could not be held against the State. According to the State, grand juries in the Tenth Judicial Circuit were suspended even longer, until November 2020.

"Yet, MacGrady's case was initiated with his arrest on February 21, 2022, some 15 months after grand juries had resumed in the Tenth Judicial Circuit. In truth, the State's explanation for the delay was a pre-existing backlog of cases that had been exacerbated by the COVID-19 pandemic. The State asserted to the circuit court that, in attempting to whittle down the backlog of pending cases, it had prioritized holding trials for defendants who were incarcerated while awaiting trial and defendants who were charged with violent crimes—neither of which applied to MacGrady.

"In Quinnie, this Court held that only the six months that had passed during the suspension constituted justifiable delay. Quinnie, 382 So. 3d at 1281. The remainder of the delay, both before and after the suspension of jury trials, was held to be negligent delay on the part of the State. Id. Further, this Court commonly views delays resulting from a congested court system as negligent 'since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' Barker, 407 U.S. at 531, 92 S. Ct. 2182. This is especially true in the instant case because it

16

involves a delay in presenting the case to the grand jury, an act over which the State has greater control relative to the setting of a case for trial. Nevertheless, this Court is sympathetic to the burdens placed on an already strained criminal-justice system by the COVID-19 pandemic. Although the 20-month delay must weigh against the State, given the nature of the delay, this Court holds that it should not weigh heavily. See Draper v. State, 886 So. 2d 105, 115 (Ala. Crim. App. 2002) ('It appears that none of the 77-month delay was attributable to the prosecutor; rather, the delay was the result of a large backlog of cases in Jefferson County and, therefore, should not weigh heavily against the State.')."

410 So. 3d at 1162 (footnotes omitted).

Here, the grand jury returned an indictment before the delays caused by the COVID-19 pandemic. But the State also asserted that, after jury trials resumed, it focused on violent cases first in trying to reduce the backlog of cases resulting from the COVID-19 pandemic. (C. 86.) Subtracting roughly six months attributable to the COVID-19 pandemic leaves the delay attributable to the State's negligence at five years. As in MacGrady, we hold that the five-year delay weighs against the State but not heavily so. Cf. Ex parte Walker, 928 So. 2d at 265 ("Thus, the second Barker factor weighs against the State, but the precise weight of the State's negligence and its effect on the prejudice to Walker is addressed in our analysis of the fourth Barker factor.").

17

C. Bonar waited more than six years after her arrest and four years after her case was bound over to the ground jury to request a speedy trial.

"An accused does not waive the right to a speedy trial simply by failing to assert it. Barker, 407 U.S. at 528, 92 S. Ct. 2182. Even so, courts applying the Barker factors are to consider in the weighing process whether and when the accused asserts the right to a speedy trial, 407 U.S. at 528-29, 92 S. Ct. 2182, and not every assertion of the right to a speedy trial is weighted equally. Compare Kelley v. State, 568 So. 2d 405, 410 (Ala. Crim. App. 1990) ('Repeated requests for a speedy trial weigh heavily in favor of an accused.'), with Clancy v. State, 886 So. 2d 166, 172 (Ala. Crim. App. 2003) (weighting third factor against an accused who asserted his right to a speedy trial two weeks before trial, and stating: '"The fact that the appellant did not assert his right to a speedy trial sooner 'tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.'"') (quoting Benefield v. State, 726 So. 2d 286, 291 (Ala. Crim. App. 1997), additional citations omitted), and Brown v. State, 392 So. 2d 1248, 1254 (Ala. Crim. App. 1980) (no speedy-trial violation where defendant asserted his right to a speedy trial three days before trial)."

Ex parte Walker, 928 So. 2d at 265-66.

The circuit court found that Bonar "is unable to assert [her] request for a speedy trial because a circuit case number and judge assignment cannot be made unless and until [Bonar] is served with the grand jury writ." (C. 19.) The record refutes the circuit court's finding that Bonar could not assert her right to a speedy trial. Counsel for Bonar asserted the right twice—in December 2021 and in August 2023. As shown by this

18

exchange at the hearing in August 2023, counsel made the speedy-trial demand without contacting Bonar:

> "THE COURT: ... Was any attempt made to contact Ms. Bonar about this motion? Not the court setting, because I know I just set it recently, but just about the motion itself.
>
> "[COUNSEL FOR BONAR]: ... Judge, no. We have not had any contact with Ms. Bonar. I think it's Bonar, I believe. But we haven't had any contact.[7]
>
> "THE COURT: And I think I said her last name—
>
> "[COUNSEL FOR BONAR]: Yeah. But, no, we have not had contact."

(R. 20.)

The record shows that Bonar (or Bonar's counsel) waited more than six years after Bonar's arrest and more than four years after her case was bound over to the grand jury to demand a speedy trial in December 2021. Bonar (or her counsel) then waited until August 2023 to again demand a speedy trial. Although the circuit court did not expressly assign weight to this factor, we find that this factor weighs only slightly in Bonar's favor because (1) Bonar, by her arrest in April 2015, knew about the charges against her and (2) the State notified Bonar's counsel in February 2018

---

[7]The record shows an Oklahoma City, Oklahoma, address for Bonar. (C. 2.)

that an indictment had been returned.[8] (C. 73.) <u>See</u> <u>Ex parte Walker</u>, 928 So. 2d at 266 ("[T]his factor weighs in Walker's favor, but not as heavily as it would if the record affirmatively showed that she did not know of the charges ....").

   D. <u>Bonar suffered no actual prejudice and is due no presumption of prejudice.</u>

> "Because 'pretrial delay is often both inevitable and wholly justifiable,' <u>Doggett [v. United States]</u>, 505 U.S. [647,] 656, 112 S. Ct. 2686 [(1992)], the fourth <u>Barker</u> factor examines whether and to what extent the delay has prejudiced the defendant. <u>Barker</u>, 407 U.S. at 532, 92 S. Ct. 2182. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: '"oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.' <u>Doggett</u>, 505 U.S. at 654, 112 S. Ct. 2686 (quoting <u>Barker</u>, 407 U.S. at 532, 92 S. Ct. 2182, and citing <u>Smith v. Hooey</u>, 393 U.S. 374, 377-79, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969); <u>United States v. Ewell</u>, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966)). 'Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."' 505 U.S. at 654, 112 S. Ct. 2686 (quoting <u>Barker</u>, 407 U.S. at 532, 92 S. Ct. 2182)."

---

[8]Despite the assertions in Bonar's motions to dismiss that no indictment had been returned, the State, in its February 2018 motion to recall the alias writ, asserted that the grand jury had returned an indictment. The State's certificate of service states that it served that motion on Bonar's counsel on February 12, 2018. (C. 73.) Bonar's counsel has not disputed the truthfulness of that certificate of service.

Ex parte Walker, 928 So. 2d at 266-67.

The circuit court found that Bonar had been prejudiced by the delay, but, in support of that finding, the circuit court stated that Bonar had been "unable to assert [her] request for a speedy trial because a circuit court case number and judge assignment cannot be made unless and until [Bonar] is served with the grand jury writ."[9] (C. 19.) Yet, as noted above, Bonar has asserted her right to a speedy trial.

The State contends that Bonar has shown no prejudice from the delay. (State's brief, p. 23.) Although Bonar offered no evidence at the speedy-trial hearing, she asserts on appeal that the delay "did prejudice" her, and she cites her serving "175 days in the Jefferson County Jail from April 3, 2015, to September 24, 2015." (Bonar's brief, pp. 10-11.)

While oppressive pretrial incarceration is a type of harm mentioned in Barker, Bonar does not allege that her 175 days of incarceration were oppressive.[10] And Bonar admitted at the speedy-trial hearing that she

---

[9]The circuit court also found that "these are not complex offenses which is also a factor that weighs against the State." (C. 19.)

[10]The record shows that Bonar had other offenses to which she had pleaded guilty. (R. 6.)

21

was not challenging the delay that included the time in which she was incarcerated. Thus, Bonar has not alleged or shown that she suffered actual prejudice.

To the point that Bonar argues that prejudice may be presumed in her case, she is due no relief. Like MacGrady, Bonar cites Hayes v. State, 487 So. 2d 987, 995 (Ala. Crim. App. 1986), for the proposition that she need not show actual prejudice, and she asserts that "'[the] prosecution should not be permitted to engage in inexcusable misconduct on the hope that the defendant will not be able to make out a case of prejudice.' [Hayes, 487 So. 2d] at 995-996." (Bonar's brief, p. 10.) See MacGrady, 410 So. 3d at 1163.

> "This Court's holding in Hayes, however, simply does not apply to the facts of this case. Hayes, as the quotation suggests, dealt with a delay that was found to be 'deliberate and inexcusable, thus warranting heavy weight against the State.' Hayes, 487 So. 2d at 992-93. As this Court has already held, and as MacGrady conceded at the hearing below, the delay here was, at most, negligent on the part of the State. The holding of the Alabama Supreme Court in Ex parte Walker addresses whether prejudice may be presumed due to negligent delay on the part of the State:
>
> > "'"[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." Doggett v. United States, 505 U.S. [647,] 657 [(1992)], 112 S.

22

Ct. 2686 [120 L. Ed. 2d 520]. The Court concluded that "the Government's egregious persistence in failing [for 8 1/2 years] to prosecute Doggett [was] clearly sufficient" to entitle the accused to relief. 505 U.S. at 657, 112 S. Ct. 2686. The Doggett Court did not, however, establish a bright-line rule for the length of delay caused by governmental negligence that will warrant a finding of presumed prejudice under the fourth Barker factor. Even so, when an accused alleges solely that [his] trial was delayed because of governmental negligence—as is the case here—lower federal courts applying Doggett generally do not presume prejudice under the fourth Barker factor unless the postindictment delay is five years or more. [United States v.] Serna-Villarreal, 352 F.3d [225,] 232 [(5th Cir. 2003)] (refusing to presume prejudice under the fourth Barker factor in a case in which prosecutorial negligence delayed the accused's trial for three years and nine months and citing Doggett, 505 U.S. at 658, 112 S. Ct. 2686 (presuming prejudice after six-year delay caused by the government's negligence); United States v. Bergfeld, 280 F.3d 486, 489-91 (5th Cir. 2002) (presuming prejudice after a five-year-and-three-month delay caused by the government's negligence, but noting that "[h]ad the delay been considerably shorter, [the accused] might well have been properly required to demonstrate prejudice"); United States v. Cardona, 302 F.3d 494, 498-99 (5th Cir. 2002) (presuming prejudice where governmental negligence resulted in a delay of more than five years); United States v. Brown, 169 F.3d 344, 349-51 (6th Cir. 1999) (presuming prejudice where governmental negligence resulted in five and one-half-year delay); United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992) (presuming prejudice where governmental

23

> negligence resulted in a six-year delay)). Like the Doggett Court, we do not adopt a bright-line rule for the length of delay that will result in a finding of presumed prejudice. But we note that the four-year-and-two-month delay in Walker's case is well within the five-year time period generally established by federal cases for presuming prejudice. Further, "[t]here is no indication from this record that either the [State]'s negligence or the resulting length of the delay here adversely affected the evidence so as to undermine the fairness of a trial." Serna-Villarreal, 352 F.3d at 233.'
>
> "Ex parte Walker, 928 So. 2d at 269-70."

MacGrady, 410 So. 3d at 1163-64. The Court in Ex parte Walker cited an "inverse-variance" rule from Doggett, under which

> "the reviewing court's 'toleration of [governmental] negligence varies inversely with its protractedness ... and its consequent threat to the fairness of the accused's trial.' Doggett, 505 U.S. at 657, 112 S. Ct. 2686. In other words, the longer the delay resulting from the state's negligence, the greater the likelihood that the accused's speedy-trial right has been violated, even without the accused affirmatively demonstrating actual prejudice."

Ex parte Walker, 928 So. 2d at 268.

In MacGrady, this Court held that the 20-month delay there was "well short of any standard that would trigger presumed prejudice," and this Court noted that " '[t]here is no indication from this record that either the [State]'s negligence or the resulting length of the delay here adversely

24

affected the evidence so as to undermine the fairness of a trial.' [United States v.] Serna-Villarreal, 352 F.3d [225,] 233 [(5th Cir. 2003)]." MacGrady, 410 So. 3d at 1164 (quoting Ex parte Walker, 928 So. 2d at 270). This Court thus held that it would not presume that MacGrady had suffered prejudice.

The five-year delay in Bonar's case is the minimum threshold recognized in Ex parte Walker at which courts have presumed prejudice. In Ex parte Walker, the Alabama Supreme Court refused to presume prejudice based solely on a 50-month delay caused by the State's "official negligence." The Court distinguished Doggett for two reasons:

> "(1) the length of the delay, and (2) proof of the accused's knowledge of the indictment. As noted, approximately three years passed from Walker's indictment until her arrest, and four years and two months passed from her indictment until she entered her guilty plea. Both of these delays are substantially less time than the 8 1/2-year delay between the indictment and the arrest in Doggett. 505 U.S. at 657-58, 112 S. Ct. 2686. Accordingly, the longer delay in Doggett created a much greater presumption than is present here that the negligent delay prejudiced the accused's ability to present a defense. 505 U.S. at 652, 657-58, 112 S. Ct. 2686. In addition, the record in Doggett revealed that the accused had no knowledge of the indictment against him during the 8 1/2 years from his indictment until his arrest. 505 U.S. at 653-54, 112 S. Ct. 2686. Thus, the Court in Doggett concluded that the accused was 'not to be taxed for invoking his speedy trial right only after his arrest.' 505 U.S. at 654, 112 S. Ct. 2686. But as we concluded in our discussion of the third factor, Walker has

25

not established that she did not know of the charges against her during the time between the issuance of the indictment in her case and her arrest. ... Thus, her situation is distinguishable from that of the accused in <u>Doggett</u>."

<u>Ex parte Walker</u>, 928 So. 2d at 269.

Both grounds are present here: (1) The delay in Bonar's case is much shorter than the delay in <u>Doggett</u> and (2) Bonar knew about her arrest in April 2015. And, based on the State's February 2018 motion to recall the alias writ, which was served on Bonar's counsel and which stated that the grand jury had returned an indictment, Bonar through counsel also knew about the indictment. Thus, we hold that the circumstances do not justify presuming that the delay prejudiced Bonar.

With no actual or presumed prejudice, the circuit court erred in finding that the delay prejudiced Bonar and violated her right to a speedy trial. <u>See</u> <u>MacGrady</u>, 410 So. 3d at 1165-66. "'Consequently, "balancing the four <u>Barker</u> factors, we cannot say that the delay in this case experienced by [Bonar] prejudiced [her] to the degree that would warrant the dismissal" of the ... charge[s] against [her] at this time.'" <u>MacGrady</u>, 410 So. 3d at 1166 (quoting <u>State v. Crandle</u>, 368 So. 3d 934, 946 (Ala. Crim. App. 2021), quoting in turn <u>State v. Jones</u>, 35 So. 3d 644, 659 (Ala. Crim. App. 2009)).

26

## Conclusion

The judgment of the circuit court is reversed, and this cause is remanded to that court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Cole, J., concur. Kellum, J., concurs in the result. Anderson, J., concurs in the result, with opinion.

ANDERSON, Judge, concurring in the result.

A person seeking relief from a court must both properly invoke that court's jurisdiction <u>and</u> submit themselves to that court's jurisdiction. Jeri Bonar had two avenues for doing that: 1) she could have commenced an action seeking an extraordinary writ, resulting in the creation of a circuit-court docket number, or 2) she could have appeared in the Jefferson Circuit Court and accepted service of the indictment that had been returned against her and proceeded under a circuit-court docket number. Bonar, however, did neither. Instead, she remained outside the court's jurisdiction. Bonar's location, wishes, intentions, and status were unknown to all -- <u>including the attorneys who filed a motion to dismiss on her behalf in Jefferson District Court</u>. By addressing the merits of Bonar's motion to dismiss that was filed electronically in the Jefferson District Court, the main opinion avoids this important jurisdictional issue and encourages, rather than dissuades, parties who refuse to submit themselves to the jurisdiction of our courts.

While I agree that the result reached by the main opinion is correct, I do not believe that this Court could properly reach the merits of Bonar's motion to dismiss. My concerns about the jurisdictional defects in this

28

appeal were set forth in my dissent from this Court's earlier order remanding this appeal to the district court with instructions. See State v. Bonar, [No. CR-2023-0629, June 30, 2025] ___ So. 3d ___, ___ (Ala. Crim. App. 2025) (Anderson, J., dissenting). Even now, with the benefit of Judge Pickett's finding that she was "acting as duty judge" and in her "capacity as a circuit court judge" when she granted Bonar's motion to dismiss, two jurisdictional concerns remain. First, if Bonar's lawyers filed a motion to dismiss in the Jefferson District Court, how did the Jefferson Circuit Court obtain subject-matter jurisdiction over that motion? Second, how did the circuit court acquire personal jurisdiction over Bonar?

As to the first question, on return to remand, the main opinion asserts that the State is "confused" about "which court granted Bonar's motion to dismiss." ___ So. 3d at ___. If so, it is not without good cause. Indeed, any confusion on the State's part might be explained by the fact that the style of this appeal, as noted in this Court's previous order[11] reads "Appeal from Jefferson District Court." Perhaps the State's

---

[11]See Bonar, ___ So. 3d ___ (reported as an "Appeal from Jefferson District Court, Nos. DC-15-3187 and DC-15-3188, Kandice E. Pickett, Judge").

confusion arises from Judge Pickett's entry of a dismissal order in two district-court cases using an order styled "In the District Court of Jefferson County, Alabama." (C. 18.) Or, more to the point, maybe the confusion arises because Bonar has <u>never</u> invoked the jurisdiction of the Jefferson Circuit Court or paid a filing fee to commence an action in that court.

As for the main opinion's focus on whether the State has taken inconsistent positions in the lower court and in this Court, <u>we</u> are required to address obvious jurisdictional defects whenever they appear. See <u>Ex parte Smith</u>, 438 So. 2d 766, 768 (Ala. 1983) (citing <u>City of Huntsville v. Miller</u>, 271 Ala. 687, 127 So. 2d 606 (1958); <u>Payne v. Department of Indus. Rels.</u>, 423 So. 2d 231 (Ala. Civ. App. 1982); <u>Nigg v. Smith</u>, 415 So. 2d 1082 (Ala. 1982); and Rule 60(b)(4), Ala. R. Civ. P.)) ("Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction <u>ex</u> <u>mero</u> <u>motu</u>" because, if "a court is without subject matter jurisdiction, any judgment rendered therein is void."). In that regard, the State cannot be treated differently than the countless other appellants who have raised jurisdictional claims in this Court that were not properly

framed or preserved in the trial court. See, e.g., Z.J.H. v. State, [Ms. CR-2023-0302, June 27, 2025] ___ So. 3d ___, ___ (Ala. Crim. App. 2025) (noting that issue regarding unauthorized sentence had "not been raised on appeal" but that, "[b]ecause '[m]atters concerning unauthorized sentences are jurisdictional,' … this Court may take notice of an illegal sentence at any time"); Wesson v. State, 370 So. 3d 841, 864 (Ala. Crim. App. 2020) ("Although Wesson raises this claim for the first time on application for rehearing, because his claim raises a jurisdictional issue, it can be raised at any time.").

I am puzzled at the main opinion's ready acceptance that Judge Pickett's "acting as duty judge" meant that "at the time of the hearing" she "was acting … as a circuit court judge" as disposing of the question of jurisdiction. ___ So. 3d at ___. According to the main opinion, this "confirms Bonar's assertion in her brief on original submission that Judge Pickett was acting as the duty judge in circuit court when she considered and ruled on Bonar's motion to dismiss." ___ So. 3d at ___. I do not question Judge Pickett's sincere belief that she was acting in that capacity, though I do find it difficult to reconcile her order on remand with her concession during the proceedings below that she knew "the case

31

can't get started in circuit court until [Bonar is] served with the writ" and that "I can't even serve [Bonar] with a court date because she hasn't been served." (R. 15, 20.)

Nonetheless, neither the Code of Alabama nor the Constitution of Alabama of 2022 reference an "Office" of duty judge, whereas they do reference the offices and duties of circuit and district judges. Instead, Alabama law recognizes that a circuit judge may be appointed an additional duty to serve as a district judge, see § 12-17-67, Ala. Code 1975, but a circuit judge acting in the district court is bound by the jurisdictional limitations of that subordinate court. See generally State ex rel. Locke v. Sweeney, 349 So. 2d 1147, 1148 (Ala. 1977) ("the jurisdiction of neither the Circuit nor the District Court of Mobile County is affected by the temporary assignment of a judge from one to the other. The jurisdiction of both courts remains the same, as does the venue of causes in either." (emphasis added)). Judge Pickett may have been a "duty" judge, but the duties she was performing pertained to a motion to dismiss filed in the Jefferson District Court under case numbers DC-15-3187 and DC-15-3188.

As noted in my earlier dissent, under § 12-17-26, Ala. Code 1975, circuit judges have the authority to "exercise such other powers as are or may be granted them by law." If Judge Pickett was acting as a circuit judge, the main opinion should be able to point to somewhere in the record on appeal where Bonar properly invoked the jurisdiction of the circuit court by means of a petition for the writ of habeas corpus, a petition for the writ of mandamus, or some other appropriate mechanism, including the payment of a filing fee. A motion to dismiss, however, presupposes the existence of a pending action. It is telling that there is nothing in the record on appeal to support a finding that a legal cause of action was pending before the circuit court to allow Judge Pickett to sit as a circuit judge. See Sweeney, supra.

For example, at the time Bonar's counsel filed the motion to dismiss in the district court, they were unaware that an indictment had been returned. While the main opinion notes that it was disclosed that an indictment had been returned before the hearing on Bonar's speedy-trial claim, Bonar's defense counsel were ignorant of that fact at the time they filed the motion to dismiss and when they appeared before Judge Pickett. As Bonar's counsel argued, "the cases were waived to the grand jury in

33

2017" and "there has been no indictment returned." (C. 5.) It cannot be seriously maintained, therefore, that Bonar's counsel were seeking to commence an action in the circuit court in <u>response</u> to the return of an indictment.

If no such civil or criminal action exists, then the main opinion should be able to point to some statute or rule authorizing the circuit court to take the actions it took. <u>See</u> § 12-17-26, Ala. Code 1975. While courts do possess certain inherent powers, the authority to transform a district-court case into a circuit-court case is not among them. <u>See</u> <u>Ex parte Smith</u>, 438 So. 2d at 768 (citing <u>In re Ingram</u>, 356 So. 2d 618 (Ala. 1978)) ("We are in agreement with the Court of Civil Appeals to the extent that a circuit court is without authority to transfer a cause from an inferior court under the auspices of its general supervisory powers."). Bonar's counsel electronically filed a motion to dismiss in the district court and did nothing to invoke the jurisdiction of the circuit court. The circuit court, moreover, was without authority to transfer Bonar's district-court action to the circuit court under the auspices of its general supervisory powers.

34

The closest the main opinion comes to explaining the circuit court's subject-matter jurisdiction is its citing the return of indictments against Bonar to justify the conclusion that it was the Jefferson Circuit Court that "dismissed Bonar's indictment." The main opinion suggests -- but does not say – that, because the district court lost jurisdiction over the cases when Bonar was bound over to the grand jury for indictment, jurisdiction over Bonar's cases <u>must</u> have lied with the circuit court. The main opinion, in a footnote, recognizes that circuit court has authority to act in a felony prosecution once it has been bound over to the grand jury or before the service of the indictment on a defendant, citing, in turn, a footnote in <u>Horton v. State</u>, 369 So. 3d 1128, 1134 n.2 (Ala. Crim. App. 2022). ___ So. 3d at ___ n. 5. While it is true that circuit courts have jurisdiction and some limited powers to act in regard to grand-jury proceedings and felony prosecutions before service of an indictment on the accused, a circuit court's jurisdiction still must be properly invoked. As noted in <u>Ex parte Smith</u>, <u>supra</u>, the circuit court lacked authority to transfer the motion to dismiss Bonar's counsel filed in the district court to form a "new" action in the circuit court under the auspices of its general supervisory powers.

35

More importantly, in <u>Horton</u> the Court did not discuss <u>how</u> Horton could have invoked his right to a speedy trial, but the record in that case shows that he was on pretrial release during the relevant period. <u>Horton</u>, 369 So. 3d at 1130; <u>cf.</u> <u>State v. MacGrady</u>, 410 So. 3d 1158, 1160 (Ala. Crim. App. May 3, 2024) (noting that "MacGrady was released on bond" but remained in the area). Thus, he was both subject to the court's jurisdiction and to limitations on his liberty, the conditions of his bond, and he could have asserted his speedy-trial rights in a petition for the writ of habeas corpus. That is not so in Bonar's case.

The main opinion further suggests that the absence of a circuit-court case number -- whether a circuit-court criminal docket number or circuit-court civil docket number -- is merely a ministerial misstep, noting that "[t]he record does not reveal why the Jefferson Circuit Clerk has not assigned circuit-court case numbers to Bonar's cases." ___ So. 3d at ___ n.4. But the reason for the absence of a circuit-court case number is staring this Court in the face -- even though an indictment was returned and an arrest warrant issued, Bonar has eluded arrest. In such cases -- when an indictment has been returned but not yet served -- a

36

circuit court's powers over the indictment are limited.[12] One such power directly relevant to the situation at hand is found in "Section 15-8-71[, Ala. Code 1975, which] expressly allows for withdrawing and filing an indictment when an accused cannot be located for prosecution." Skinner v. State, 843 So. 2d 820, 823 (Ala. Crim. App. 2002). However, it is the district attorney who has the power to "withdraw and file" the indictment, and the circuit court's only power is to give or deny leave to do so. § 15-8-71, Ala. Code 1975.

Still, even assuming that subject-matter jurisdiction lies with the circuit court, the important question of personal jurisdiction remains. A circuit court must acquire both subject-matter and personal jurisdiction in an action. Ex parte Seymour, 946 So. 2d 536, 537 n.3 (Ala. 2006) (citing Wolf v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (Ala. 1911)). In other words, "[a] court has jurisdiction if it has jurisdiction of the subject matter and of the parties." Goulden v. State, 292 Ala. 704, 705, 299 So. 2d 325, 326 (1974). One way that the circuit court could have obtained personal jurisdiction over Bonar is if she had filed a petition for an

_____

[12]Indeed, after the indictment is returned but before it is served, only the presiding judge of the circuit is even allowed to see it. § 15-8-70, Ala. Code 1975.

extraordinary writ, paid the requisite filing fee, and submitted herself to that court's jurisdiction.[13] It is clear that personal jurisdiction over the parties would have existed if Bonar had properly sought the circuit court's intervention through a petition for an extraordinary writ and served the State. See, e.g., Woodruff v. City of Tuscaloosa, 101 So. 3d 749, 752 (Ala. 2012) (noting that personal jurisdiction existed when Woodruff initiated the lawsuit and that there is no question that he properly served the City). But no petition was filed, nor was any filing fee paid.[14] Instead, Bonar's attorneys decided -- without attempting to contact their missing

---

[13]Of course, this would have required Bonar to make her whereabouts known to the law-enforcement officials seeking to serve her with the arrest warrant and indictment.

[14]Historically, neither the Alabama Supreme Court nor this Court have shied away from ensuring that the jurisdiction of a trial court is properly invoked through the payment of necessary docket fees as part of its duties in considering an appeal. See, e.g., Ex parte Beavers, 779 So. 2d 1223, 1225 (Ala. 2000) ("Furthermore, the circuit court erred in ruling on the merits of Beaver's Rule 32[, Ala. R. Crim. P.,] petition after denying his request to proceed in forma pauperis. Because the circuit court denied his request to proceed in forma pauperis, it lacked jurisdiction to rule on the merits of his petition."); Ex parte Thomas, 723 So. 2d 1261, 1262 (Ala. 1998) ("Moreover, the circuit court erred in ruling on the merits of Thomas's petition for medical treatment after denying his request to proceed in forma pauperis. When the circuit court denied his request to proceed in forma pauperis, it lacked jurisdiction to rule on the merits of his petition."). The main opinion offers no reason for departing from this practice.

client -- to seek dismissal of the State's prosecution through the electronic filing of a motion to dismiss in the Jefferson District Court. (C. 5, 20.)

Of course, Bonar had much simpler ways of invoking the circuit court's jurisdiction -- she could have simply abided by the conditions of pretrial release originally imposed on her by the district court or surrendered herself to law enforcement. State v. Bennett, 727 So. 2d 863, 865 (Ala. Crim. App. 1997) (holding that circuit court "acquired in personam jurisdiction over Bennett by Bennett's voluntary appearance at both proceedings, where he submitted himself to the jurisdiction of the court without objection"). Bonar, however, did not do so. Indeed, we have no indication in the record that she was even aware that her speedy-trial rights were being asserted by her counsel.

The particular facts of Bonar's case -- which include a withdrawn bond, an unserved indictment, and a defendant in the wind -- cause me serious concern over whether Judge Pickett had the requisite jurisdiction to rule on the merits of Bonar's motion. Moreover, the Court raises additional troublesome practical questions by reaching the merits of her speedy-trial claim.

39

Challenges to a felony prosecution on speedy-trial grounds must be made by means of a pretrial motion filed in accordance with Rule 15.2, Ala. R. Crim. P. But if a circuit court can reach the merits of a speedy-trial motion in the situation presented by this record on appeal, could it rule on <u>other</u> pretrial motions that are beyond the power of the district court? For example, after a case is bound over to the grand jury, a district court cannot grant a motion for pretrial discovery. <u>State v. Brown</u>, 259 So. 3d 655, 660 (Ala. 2018). Could a criminal defendant who was "on the lam" in another state file a motion for discovery to gauge the strength of the State's case against her before deciding whether to surrender to police? The logic of the main opinion would suggest that the answer to that question is "yes." At bottom, I am troubled by the notion that a criminal defendant who has effectively fled prosecution by avoiding arrest could both have her cake and eat it too by avoiding the circuit court's jurisdiction <u>while</u> taking advantage of it.

Because I cannot ignore these jurisdictional questions that remain unanswered by the main opinion, I can only agree with the result it reaches -- that Bonar was not entitled to any relief on her motion to dismiss on speedy-trial grounds. Should either party to this appeal

40

successfully seek further review of this Court's decision in the Alabama Supreme Court, I respectfully ask that Court to address the issue of subject-matter jurisdiction presented by these facts for our benefit, as well as for the benefit of the circuit and district courts.

Alabama's courts and judges exercise considerable power -- but that power is not limitless. What power the judicial branch does wield must be <u>authorized</u> and delegated to us by rule, statute, or constitutional provision. Because I can find no such authority allowing a circuit court to grant relief to someone in Bonar's position -- an indicted defendant seeking dismissal of an indictment while refusing to submit to the court's jurisdiction -- I cannot agree that the dismissal of Bonar's indictment was a proper use of judicial power. Consequently, I concur only in the result.